STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Higgins - Jockey Lane subdivision final plat | } | Docket No. 200-8-06 Vtec |
| (Appeal of Clark W. Hinsdale, III, and Monica Tupper) | } | |
|  | } | |

Decision and Order on Motion for Summary Judgment

Appellants Clark W. Hinsdale III and Monica M. Tupper appealed from a decision of the Development Review Board (DRB) of the Town of Monkton granting final plat approval to Appellee-Applicants John and Lesley Higgins for a six-lot subdivision. Appellants are represented by Liam L. Murphy, Esq. and Pamela A. Moreau, Esq.; Appellee-Applicants are represented by Matthew T. Daly, Esq.; and the Town of Monkton is represented by David Rath, Esq.

Appellee-Applicants have moved for summary judgment on all questions in the Statement[1] of Questions. Appellants have only responded specifically with regard to Questions 1, 2, 8, 9, and 10. However, failure to respond to a motion for summary judgment does not result in automatic summary judgment in favor of the moving party; the Court must nevertheless satisfy itself that the materials supporting the motion for summary judgment are "both formally and substantively sufficient to show absence of a fact question" and that the moving party is entitled to judgment as a matter of law. Miller v. Merchant's Bank, 138 Vt. 235, 238 (1980); see also Milton Educ. & Support Ass'n v. Milton Bd. of School Trustees, 171 Vt. 64, 74-75 (2000) (quoting Bacon v. Lascelles, 165 Vt.

---

[1] Some of the questions in the Statement of Questions are framed in terms of whether the application contains all the information required by the regulations; other questions are framed in terms of whether the proposal satisfies certain sections of the regulations.

1

214, 218 (1996)). In this de novo appeal, the Court must apply the substantive standards that were applicable before the DRB to determine whether there are any genuine issues of material fact and whether Appellee-Applicants are entitled to judgment as a matter of law. V.R.E.C.P. 5(g); 10 V.S.A. 8504(h).

The following facts are undisputed unless otherwise noted.

Appellee-Applicants own an 85.83-acre parcel of land that they propose to subdivide into the six lots at issue in the present application. The project property has frontage on the north side of Jockey Lane in the Town of Monkton. Appellant Tupper owns a 10.2-acre parcel of land immediately to the north of and adjoining Appellee-Applicants' property. Appellant Hinsdale owns 78.5 acres of land in two parcels north of Appellee-Applicants' property, separated from it by another unrelated property. Appellants claim rights of access to their property from Jockey Lane via private rights-of-way and/or by a so-called "pent" public road, over Appellee-Applicants' property. Appellants have filed[2] a complaint for declaratory relief in the Addison Superior Court for a declaration that the pent road and the rights-of-way exist over the Higgins' property giving access to Appellants' properties from Jockey Lane.

Appellee-Applicants propose to divide the 85.83-acre parcel into six lots, numbered[3] as Lots 7 through 12, each proposed to have a building site for a single-family house. The

---

[2] The complaint was filed on July 25, 2007 and was assigned Docket No 197-7-07 Ancv, but as it has not yet been served, it is not a public record, no answer has been filed, and it has not been scheduled by the Superior Court.

[3] Appellee-Applicants use a numbering system beginning with Lot 7, possibly due to a prior subdivision having lots numbered 1 through 6, while Appellants' Exhibit C shows the lots for the present proposal as numbered 1 through 6. To avoid confusion, this decision uses the numbering system used by Appellee-Applicants' application at issue in the present case, referring to the lots as numbered 7 through 12.

relative locations of the proposed building envelopes and infrastructure in relation to the rights-of-way are the focus of Appellants' Statement of Questions. The southernmost five of the six proposed lots: Lots 7 through 11, range from 5.1 acres to 7.9 acres in size. Proposed Lot 12 contains the remaining 53.8 acres and comprises the northern half of the project.

Proposed Lot 7 has frontage on Jockey Lane. Access to the subdivision is proposed to be by a subdivision road having a fifty-foot-wide right-of-way and extending northerly from Jockey Lane at the southwesterly corner of Lot 7, through Lots 7 and 8, and terminating in a cul-de-sac located wholly on Lot 9. A thirty-thousand-gallon fire pond with a dry hydrant is proposed to be constructed within the loop of the cul-de-sac, to provide water for fire fighting. Two additional fifty-foot-wide easements benefitting Lot 12 extend northerly from the cul-de-sac, one over Lot 9 and one over Lot 11. Access to each house site is via a separate driveway from the subdivision road, except that access to the house site on Lot 12 is by an extension of the driveway serving Lot 11.

Appellants and Appellee-Applicants appear to agree[4] that several rights-of-way cross the proposed subdivision and appear to agree as to their locations; they disagree as to the legal status of these rights-of-way and as to whether the more westerly of these is a so-called "pent" or enclosed public road.[5]

---

[4] As further discussed with regard to Question 1, below, the easement and right-of-way sheet of Appellee-Applicant's application, Sheet C2, shows dotted-and-dashed lines in these locations, but lacks a legend or notes to explain what the dotted-and-dashed lines are intended to represent.

[5] The term "pent road" is defined as "any town highway which, by written allowance of the selectmen, is enclosed and occupied by the adjoining landowner with unlocked stiles, gates and bars in such places as the selectmen designate." 19 V.S.A. § 301(4). The legislative body of a municipality may discontinue any town highway under the procedures found in 19 V.S.A. §§ 708-11. 19 V.S.A. § 771(a).

Two asserted rights-of-way extend northerly from Jockey Road, crossing into Lot 12 of the proposed subdivision at its southeasterly and southwesterly corners. The more easterly of these rights-of-way extends northerly from Jockey Lane along the proposed subdivision roadway to just past the driveway for the house site on Lot 7, and then extends northerly through proposed Lots 8 and 9, crossing through or very close to the proposed sites for the septic disposal fields, house sites, and well shield envelopes on Lots 8 and 9. After extending onto Lot 12 at its southeasterly corner, one branch of this right-of-way extends to the north across Lot 12 onto the property directly to the south of Appellant Hinsdale's property. On Lot 12., the other branch of the more-easterly right-of-way turns to the west and extends westerly across Lot 12, crossing the proposed driveway to the Lot 12 house site and crossing through the proposed site for the primary disposal field for Lot 12.

The more westerly of the two asserted rights-of-way is the one claimed by Appellants to be a "pent" public road. It extends northerly from Jockey Lane over unrelated land and enters the proposed subdivision along the westerly boundary of Lot 11 onto Lot 12 at its southwesterly corner, extending to the north across Lot 12 onto or near Appellant Tupper's property.

Appellee-Applicants and the Town of Ferrisburgh entered into a settlement stipulation that was ratified by the Town of Ferrisburgh on June 5, 2007, ratified by the Town of Monkton on July 9, 2007, and approved by the Court on July 17, 2007. The stipulation provided that Ferrisburgh would agree to approval of the subdivision if the traveled portion of the access drive is at least twenty feet wide, if all other roads in the subdivision are at least fourteen feet wide, if the dry hydrant and fire pond are constructed to provide sufficient fire protection as determined by the Chief of the Ferrisburgh Fire Department, if Appellee-Applicants convey an easement to the Town of Monkton at the southeast corner of the property for the construction of a separate cul-de-sac adjacent to

4

Jockey Lane, if Appellee-Applicants provide by covenant for the maintenance of the dry hydrant, fire pond, and subdivision roadway, and if they file a revised plot plan[6] depicting these conditions.

## DRB Checklists

It is the practice of the DRB to maintain a checklist, filled out by the DRB or its staff, listing the required submissions for each stage of the subdivision application process, which in Monkton comprises sketch plan review, followed by preliminary and then final subdivision plat review.  See In re Appeal of Carroll, 2007 VT 19, ¶¶ 13-14.  As this is a de novo appeal, the fact that an the applicant's submissions were checked off by the DRB or its staff as meeting the requirements for each stage of review is not dispositive of any issue on appeal, any more than any other portion of the DRB's decision which is before the Court in this appeal.

## Question 5 of the Statement of Questions

Appellants' Question 5 asks whether the proposed subdivision is consistent with certain 2006 amendments to 19 V.S.A. §§ 302 and 305, the statute addressing the classification and inspection of town highways.  Nothing in the Monkton Subdivision Regulations incorporates by reference any provisions of Title 19, nor is Title 19 within the jurisdiction of the Court as defined in 4 V.S.A. § 1001(b).  Accordingly, Question 5 is beyond the jurisdiction of the Court and Appellee-Applicants' motion to dismiss Question 5 is GRANTED.

---

[6] Although this settlement has been approved, if the revised plot plan has been filed, a copy has not been provided to the Court.

Questions 1 and 6 of the Statement of Questions

Appellee-Applicants have also moved to dismiss Questions 1 and 6 as beyond the jurisdiction of the Court.

Appellants' Question 1 addresses whether the proposed subdivision plat contains certain information required to be included in the application. Question 1 asks whether the subdivision plat contained in the application accurately shows and identifies existing accesses to Appellants' parcels to the north of the subdivision property, pursuant to § 210(4) of the Subdivision Regulations.[7] That section requires (in the first subsection (4)) that the applicant submit information regarding "existing restrictions on the use of land, including easements" and requires (in the second subsection (4)) that the applicant submit information regarding "streets which are proposed, mapped, or built."

While Appellee-Applicants are correct that this Court is without jurisdiction to determine the extent of the property rights of the parties with respect to any claimed right-of-way or claimed pent public road, the Court does have jurisdiction to determine whether an application for subdivision has met all the requirements for submission and for approval under the municipality's regulations. See, e.g., Appeal of Cole, Docket No. 174-10-01, slip op. at 1 (Vt. Envtl. Ct. May 12, 2003); In re: Appeals of Van Nostrand, Docket Nos. 209-11-04 Vtec and 101-5-04 Vtec, slip op. at 4 (Vt. Envtl. Ct. Jan. 13, 2006).

The Court has only been provided with reduced size versions of the subdivision plans, at a reduction of approximately one-quarter of the size of the plans submitted with the application, including two versions of Sheet C2, entitled "LOT LAYOUT, RIGHT OF WAY, AND EASEMENT SHEET," one dating from December of 2005 and one dated May

---

[7] Section 210 contains one set of numbered subsections for minor subdivisions and another set of numbered subsections requiring additional information to be submitted for major subdivisions. The both sets of information are required for the present project as a "major" subdivision of more than three lots and requiring a new street.

23, 2006, with a revision date marked Final Permit Approval, dated 6/12/06. The final version of Sheet C2 shows dotted-and-dashed lines extending from Jockey Lane towards the north (as well as an east-west line through proposed Lot 12) in the locations asserted by Appellants to be either private rights-of-way or a pent public road.

However, there is no legend or key on Sheet C2 to define whether these dotted-and-dashed lines are claimed by Appellee-Applicants to be "existing restrictions on the use of land, including easements" or to be "streets which are . . . mapped," under § 210, or whether Appellee-Applicants' plan is simply showing them as disputed rights-of-way. Nor can the Court find within the application materials submitted with the present motions any narrative or other indication of what the dotted-and-dashed lines are intended to represent. Without such a key, legend, note[8] or narrative, material facts are in dispute as to whether Sheet C2 of the proposed subdivision plan meets the requirements of § 210. Therefore, Appellee-Applicants' motion for summary judgment on Question 1 is DENIED.

Appellants' Question 6 asks whether the application adequately addresses "the municipal burdens to Monkton and Ferrisburgh associated with the upgrading and maintenance of Jockey Lane and other municipal roads." However, unlike the standards applicable to conditional use approval, compare 24 V.S.A. § 4414(3)(A)(i), (iii), nothing in the Subdivision Regulations appears to address the upgrading or maintenance of municipal roads[9] beyond the boundaries of the subdivision parcel. To extent that the project's effect

---

[8] Compare Note 7 on the sheet of the application entitled "SUBDIVISION PLAT," referring to a different easement than those apparently shown on Sheet C2..

[9] Moreover, even if the Subdivision Regulations did address the municipal burden on the roads within the Town of Monkton, they do not address the upgrading and maintenance of roads in neighboring towns. In any event, the Town of Ferrisburgh had standing as an interested party in this matter, and entered into a settlement with Appellee-

7

on Jockey Lane is addressed by the project's curb cut permit, if it is the Selectboard that granted the curb cut permit, an appeal of that decision is also beyond the jurisdiction of this Court. 4 V.S.A. § 1001(b). Accordingly, Question 6 is beyond the jurisdiction of the Court and Appellee-Applicants' motion to dismiss Question 6 is GRANTED.

Questions 8 and 9 of the Statement of Questions

Appellants' Question 8 asks whether the application accurately identifies "requested waivers of road frontage and other district planning standards." While § 140 of the Subdivision Regulations allows the Development Review Board, and hence this Court in this <u>de novo</u> appeal, to waive the provision of otherwise-required improvements, subject to appropriate conditions, the portion of the application provided to the Court contains no indication that Appellee-Applicants have requested any waivers of any of the requirements of the Subdivision Regulations. It is up to Appellee-Applicants to determine whether they wish to request any waivers[10] in their application. Accordingly, Appellee-Applicants' Motion for Summary Judgment as to Question 8 is GRANTED.

Appellants' Question 9 asks whether the septic disposal facilities for the subdivision are "properly sited" vis-à-vis the "existing accesses to adjoining properties." The issue raised by Question 9 is not whether the proposed locations of the septic disposal facilities

---

Applicants, so that Question 6 as it pertains to the Town of Ferrisburgh has also become moot. <u>In re Grievance of Vt. State Employees' Ass'n, Inc.</u>, 2005 VT 135, ¶10, 179 Vt. 578, 581 (2005).

[10] Of course, if Appellants show that some requirement of the Subdivision Regulations is not met by the application, and if Appellee-Applicants therefore later determine that they wish to request a waiver, the Court would then have to consider whether to remand the application to the Development Review Board for it to consider the waiver in the first instance.

meet the state or local requirements for approval of septic facilities; they have received state approval which has not been appealed, and only state approval is required under §256 of the Subdivision Regulations. Rather, the issue raised by Question 9 is whether the location of the septic systems for some of the lots interferes with the rights of Appellants to the use of certain of the claimed rights-of-way. Because the Subdivision Regulations do not require the DRB, and hence this Court in this <u>de</u> <u>novo</u> appeal, to approve the location of septic systems, Question 9 is beyond the jurisdiction of this Court. Accordingly, Appellee-Applicants' Motion for Summary Judgment as to Question 9 is GRANTED.

<u>Questions 2, 3, and 7 of the Statement of Questions</u>

Appellants' Question 2 asks whether the proposed subdivision meets the requirements of § 321(2), (6), (7), (9), (11), (12), and (13) regarding the issues of access to adjoining parcels, fire protection, and provision for utilities. Section 321(7) is addressed below in the discussion of Question 3.

Section 321(2) requires that subdivision streets "shall be arranged as to cause no undue hardship to adjoining properties, and shall be coordinated so as to compose a convenient system." Section 321(11) requires that the "[a]rrangement of streets shall provide for continuation of existing streets between adjacent properties where necessary for convenient movement of traffic, fire protection[,] or efficient provision of utilities." Until the status of the asserted rights-of-way (including the asserted "pent" public road) is resolved, this Court cannot determine whether the design of the subdivision or the relative locations of the subdivision roadway and those rights-of-way cause any hardship to adjoining properties or compose a convenient system, or whether the continuation of any project roadways is necessary for convenient movement of traffic, for fire protection, or for the efficient provision of utilities to those adjoining properties. Accordingly, summary judgment must be denied as to §§ 321(2) and (11).

9

Section 321(6) requires that "[w]here a tract is subdivided into lots much larger than the minimum size required in the Zoning District in which a subdivision is located" the DRB may require that streets be laid out to permit future subdivision. The minimum lot size in the RA 5 zoning district has not been provided to the Court, but assuming from the name of the district that the minimum lot size is five acres, only lot 12 is "much larger" than the minimum lot size. As the easement for the subdivision roadway has been extended onto Lot 12 in two locations, the subdivision meets this requirement. Accordingly, summary judgment must be granted in favor of Appellee-Applicants as to § 321(6).

Section 321(9) states that "[h]alf streets and privately owned reserve strips controlling access to streets or adjacent property shall be prohibited." The proposal does not appear to propose any half streets or privately-owned reserve strips. Accordingly, summary judgment must be granted in favor of Appellee-Applicants as to § 321(9).

Section 321(12) states that "[i]f the adjacent property is undeveloped and the street must be a dead-end temporarily, right[s] of way and improvements shall be extended to the property line." Until the development status of adjacent property and the status of the asserted rights-of-way (including the asserted "pent" public road) is resolved, this Court cannot determine whether the asserted rights-of-way would qualify as extension of rights-of-way to the property line under this section. Accordingly, summary judgment must be denied as to § 321(12).

Section 321(13) states that "[n]o dead-end streets shall be permitted except when topographic or physical conditions make it impossible, at the time, to extend it or connect it with another proposed or existing street." No proposed or existing streets have been claimed to exist on any adjoining property. Accordingly, summary judgment must be granted in favor of Appellee-Applicants as to § 321(13).

Therefore, because the issue of whether rights-of-way and a pent road exist on the proposed subdivision, Appellee-Applicants' motion for summary judgment on Question

2 is DENIED as to §§ 321(2), (11) and (12) and is GRANTED in favor of Appellee-Applicants as to as to §§ 321(6), (9) and (13).

Appellants' Question 3, and a portion of Question 2, asks whether the proposed subdivision meets the requirements of § 321(7) of the Subdivision Regulations with regard to provisions for widening the existing public street, that is, Jockey Lane. Section 321(7) requires that, "[w]here the subdivision borders on an existing street and the Town Plan or Official Map indicates plans for realignment or widening of the street that would require reservation of some land of the subdivision," the final plat must mark those areas as "Reserved for Street Realignment (or Widening) Purposes." Appellee-Applicants have not provided either the Town Plan or the Official Map, nor have they provided an affidavit of an appropriate Town official, to show that the Town Plan and Official Map do not indicate plans for realignment or widening of Jockey Lane. As material facts have not been provided to support the granting of Appellee-Applicants' motion for summary judgment on Question 3, it is DENIED, without prejudice to its renewal at or before trial.

Appellants' Question 7 asks whether the proposed subdivision application adequately demonstrates that the Monkton Fire Department can provide fire protection to the proposed subdivision. We treat this question as addressing whether the subdivision proposal meets § 445 of the Subdivision Regulations, rather than addressing the capacity of the Monkton Fire Department (as in the case of Question 6). Material facts are in dispute, or at least have not been provided to the Court, as to whether the Monkton Fire Chief is satisfied with the adequacy of the water storage facilities for fire protection provided by the subdivision plan, as required by § 445, nor as to whether the dry hydrant to be installed in connection with that fire pond meets the requirements of § 445 for the installation of fire hydrants in the subdivision. If it does not, that requirement could be the

11

subject of a waiver request, but no such waiver request appears to have been made. As material facts have not been provided to support the granting of Appellee-Applicants' motion for summary judgment on Question 7, it is DENIED, without prejudice to its renewal at or before trial.

Question 4 of the Statement of Questions

Appellants' Question 4 asks whether the proposed subdivision meets the requirements of § 340 of the Subdivision Regulations, which addresses the reservation of land for recreation, or payment in lieu of such reservation. Appellee-Applicants are correct that § 340 is discretionary with the DRB, and hence this Court, however, they have not provided sufficient undisputed facts for the Court to make a determination that the reservation of land for recreation should not be required under § 340. As material facts have not been provided to support the granting of Appellee-Applicants' motion for summary judgment on Question 4, it is DENIED, without prejudice to its renewal at or before trial.

Question 10 of the Statement of Questions

In their Statement of Questions, Appellants ask whether the proposed subdivision protects and provides for continuing forestry and recreational uses of the adjoining properties, referring to the Monkton Town Plan Section 2(E) and (F). Section 305(2) of the Subdivision Regulations requires subdivisions to "be in harmony with the Town Plan." Appellee-Applicants argue that the "Forest Stewardship Plan" to be created by the Declaration of Covenants goes well beyond what is required by the Town Plan. However, neither party has provided a copy of the Town Plan from which the Court could determine whether the subdivision is in harmony with those Town Plan requirements. As material facts regarding the Town Plan have not been provided to support the granting of Appellee-

12

Applicants' motion for summary judgment on Question 10, it is DENIED, without prejudice to its renewal at or before trial.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicants' Motion for Summary Judgment is GRANTED with respect to the portion of Question 2 addressing §§ 321(6), (9), and (13) and with respect to Questions 5, 6, 8 and 9; it is otherwise DENIED, as to the portion of Question 2 addressing §§ 321(2), (7), (11), and (12) and with respect to Questions 1, 3, 4, 7 and 10, as material facts are in dispute, or at least have not been provided to the Court, as to those questions.

A telephone conference has been scheduled (see enclosed notice) to discuss the appropriate next scheduling for this matter, including whether the parties wish to proceed to schedule the trial or whether, if Appellants will be serving the complaint and otherwise pursuing the declaratory judgment action, the parties wish to wait until the superior court proceedings have been resolved.

Done at Berlin, Vermont, this 28th day of September, 2007.

_____
Merideth Wright
Environmental Judge

13