2005 VT 33

**E.S. v. STATE of Vermont**

[872 A.2d 356]

No. 04-096

¶ 1. March 15, 2005. E.S. appeals a Washington Family Court order finding probable cause to hold E.S. for involuntary mental health treatment pending a preliminary hearing. E.S. claims that the court erred by admitting evidence obtained following an unlawful detention and that the State failed to meet its burden to show probable cause. We dismiss the appeal as moot.

¶ 2. On January 8, 2004, E.S., a resident of Mississippi, was at the Veteran's

Administration (VA) hospital in White River Junction, Vermont to obtain copies of personal records. Some of the VA staff became concerned about him after his stepfather told them that E.S. was suicidal. At 2:15 p.m., a VA police officer told E.S. that he could not leave the hospital until he was seen by a psychiatrist. E.S. then met with a staff psychiatrist, who completed a physician's certificate for an emergency examination of E.S. The certificate stated that E.S. was "acutely manic" and was "very irritable and angry and threatening staff and patients" and was "very delusional and agitated." It added that E.S. had threatened to "clock" various staff and had pushed a VA employee, and that his family reported that he had made "multiple suicidal and violent statements over the past several days."

¶ 3. Because E.S. had no local relatives, the VA police officer and other staff held E.S. in a hospital room until a mental health professional could arrive to complete the commitment papers. See 18 V.S.A. § 7504(a) (commitment application must be signed by interested party and physician); id. § 7101(9) (mental health professional is an interested party). In response to the restraint, E.S. became increasingly belligerent. As the court found: "He threatened to hurt anyone who came near him. He was shouting and swearing. He kicked at hospital staff, the police officer, and a physician. He received emergency psychiatric medication and was placed in restraints." The mental health professional arrived at the hospital at 6:00 p.m. and completed the commitment papers, relying in large part on E.S.'s conduct in response to the restraint. E.S. was transported to the Vermont State Hospital (VSH), where a staff psychiatrist conducted the emergency examination and completed the admission certificate. The State filed an application for involuntary treatment on January 9, 2004. E.S. requested a prob-able cause hearing on January 13, 2004, 18 V.S.A. § 7510(a), and the hearing was held on January 21, 2004.

¶ 4. At the hearing, the State offered the testimony of the VA police officer and E.S.'s treating physician at VSH in support of its case to demonstrate that there was probable cause to hold E.S. E.S. objected to the admission of their testimony, claiming that he was illegally detained by the VA police officer at the VA hospital and that any information gleaned as a consequence of this illegal detention could not be admitted under the exclusionary rule. The family court denied E.S.'s motion to exclude the evidence and found probable cause. It ordered E.S. to remain at the VSH pending a hearing on the application for involuntary treatment. The State dismissed the application on February 13, 2004, and E.S. left VSH and returned to his home state of Mississippi. E.S. filed this appeal on February 24, 2004.

¶ 5. We first address the State's arguments that the appeal should be dismissed because the case is moot and E.S. did not appeal from a final order. With respect to the mootness claim, a case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." In re P.S., 167 Vt. 63, 67, 702 A.2d 98, 100 (1997). A live controversy must exist during all stages of review. Id. At the time E.S. filed this appeal, he had been released from custody and the State had dismissed its application for involuntary treatment. Thus, this Court can no longer issue a ruling that would affect E.S's custodial status, and the case is moot unless an exception to the mootness rule applies.

¶ 6. Even if moot, a case may be reviewed if: (1) "negative collateral consequences are likely to result from the action being reviewed"; or (2) "the underlying situation is capable of repetition, yet evades review." Id. at 67, 702 A.2d at

101. The second exception applies when the challenged action is too short to be fully litigated and there is a reasonable expectation that the individual will be subject to the same action again. *In re PCB File No. 92.27*, 167 Vt. 379, 381, 708 A.2d 568, 569-70 (1998). In this case, neither exception is applicable.

¶ 7. In the past, we have recognized that when involuntary commitment results in social stigma it may satisfy the first exception. See, e.g., *State v. J.S.*, 174 Vt. 619, 620, 817 A.2d 53, 55-56 (2002) (mem.) (holding that case is reviewable because "negative collateral consequences of being initially adjudicated mentally ill and then involuntarily hospitalized may continue to plague appellant with both legal disabilities and social stigmatization"). The cases where we applied this exception, however, have involved a trial court adjudication of commitment and the appeal sought to reverse that adjudication. *Id.*; *State v. Condrick*, 144 Vt. 362, 364, 477 A.2d 632, 633 (1984); *State v. O'Connell*, 136 Vt. 43, 45, 383 A.2d 624, 625 (1978). In the one case where the mental health order on appeal was an order of involuntary medication, not a commitment judgment, we held that expiration of the order rendered the case moot. *In re C.C.*, 150 Vt. 112, 113, 549 A.2d 1058, 1059 (1988). Here, we conclude that the possible negative collateral consequences that will result from E.S.'s detention at VSH are not sufficient to avoid mootness. E.S. never went through a full hearing, was never formally adjudicated mentally ill and was never under an order of involuntary treatment. To the extent there is a stigma, it arises more from the fact that the State sought to commit E.S., and this is a fact that no decision by this Court can erase.

¶ 8. We have also applied the second exception in an involuntary commitment case where the individual was likely to be under state review again. *In re P.S.*, 167 Vt. at 68, 702 A.2d at 101 (holding that "[g]iven P.S.'s past history, the general circumstances that gave rise to the revocation of P.S.'s nonhospitalization order" were likely to occur again and therefore not moot). There is no "reasonable expectation" that E.S. will be subject to the same action again because he is a resident of a distant state, has no ties to Vermont and was here once for a unique set of circumstances. See *State v. Gundlah*, 160 Vt. 193, 196, 624 A.2d 368, 370 (1993) (holding exception did not apply because "[a] repetition of the fact pattern presented seems highly unlikely and certainly does not rise to a reasonable expectation").

¶ 9. We also agree with the State that the order from which E.S. appealed — finding that probable cause was present — was not a final judgment, and E.S. failed to obtain permission for an interlocutory review. Like preliminary detention rulings in CHINS juvenile cases, the order resolved only a preliminary question and not the merits. See *In re C.K.*, 156 Vt. 194, 198, 591 A.2d 57, 60 (1991) (denying review for rulings in preliminary stages of CHINS process "absent grounds for extraordinary relief").

¶ 10. Because we find the appeal is moot and applied for prematurely without permission from this Court, we do not reach the question of whether the exclusionary rule applies to preliminary hearings. In reaching this conclusion, however, we emphasize that we are not endorsing or finding lawful the VA hospital's conduct when it restrained E.S. pending completion of the commitment application. The record does not disclose under what power VA police and staff held E.S., and we understand the difficulties in following the statutory commitment procedure when the proposed patient lacks ties to Vermont so that there is no readily-available person to act as an applicant. Nevertheless, the denial of liberty the commitment process allows

must be based on the procedures the Legislature has required.

*Appeal dismissed.*