2009 VT 89

**STATE of Vermont v. John J.E. CURRY**

[987 A.2d 265]

No. 08-218

¶ 1. August 19, 2009. Defendant appeals the district court's determination that he was incompetent to stand trial, as well as two court orders that required him to be hospitalized for psychiatric examination prior to the court's final hearing on his competency. We dismiss the appeal as moot.

¶ 2. This case has a complicated procedural history, which we recount here not because it is a helpful model of the use of the statutory process governing competency determinations and hospitalization orders, but because the background is important to our disposition of this matter. We emphasize that in dismissing this appeal we take no position as to the propriety of the court's hospitalization orders or its competency determination. Further, we do not decide any of the issues raised by the State regarding whether a final order exists in this case or whether the appeal was timely.[1] Because we conclude the case is moot, we need not decide those issues.

¶ 3. Defendant was charged with unlawful trespass and disorderly conduct in January 2008. At his arraignment, both parties requested, and the district court ordered, an outpatient psychiatric evaluation to determine defendant's compe-

---

[1] The State's brief mirrored, in large part, the motion it filed prior to oral argument in this case, which moved to dismiss the case on several grounds, including lack of a final order, timeliness, and mootness. We decided to address the motion with the merits, and we note here that this decision disposes of the State's motion.

tence to stand trial. Approximately one month after the court-appointed psychiatrist found defendant competent, the court held a competency hearing where defendant was represented by an attorney,[2] but did not have a guardian ad litem present. At the hearing, defendant's attorney stated that she had concerns about defendant's competency to assist her in preparing for trial, notwithstanding the one-month-old psychiatric evaluation finding defendant competent. The attorney then requested an inpatient psychiatric evaluation of defendant. The State agreed to the defense attorney's request, and, despite defendant's strenuous objections, the court ordered defendant to be committed to the Department of Mental Health at the Vermont State Hospital so that a new psychiatric examination of defendant could be performed. The February 21, 2008 order for this inpatient evaluation stated that the hospitalization was for a period not to exceed thirty days.

¶ 4. On March 18, 2008, the court held a second hearing to consider defendant's competency. There was a guardian ad litem for defendant present at the hearing. This hearing would have addressed a second psychiatric evaluation of defendant, conducted in late February by the same psychiatrist who found defendant competent during the January outpatient examination. However, due to a miscommunication, the psychiatrist was unavailable to testify at this hearing. The psychiatrist's report, which the court received prior to the March 18 hearing, explained that defendant was largely uncooperative when the psychiatrist attempted to perform an examination of him at the state hospital. In the report, the psychiatrist concluded that defendant was not competent to stand trial. At the hearing, the State's position was that defendant was not competent, but defend-

ant insisted he was. Due to this disagreement, both attorneys expressed that a hearing with the psychiatrist present was necessary to decide the issue. Based on the attorneys' statements, and without objection from the attorneys, defendant, or defendant's guardiam ad litem, the court decided to reset the date for the competency hearing to allow for testimony from the psychiatrist. On the State's motion, to which the defense did not object, the court extended the time allowed for defendant's hospitalization by fifteen days from the expiration of the date of the February 21 hospitalization order.

¶ 5. The court set defendant's next hearing, which it labeled a "hospitalization hearing," for March 26, 2008. Defendant objected to the court's order for a hospitalization hearing on the basis that his competency had not yet been decided, and he moved to continue the hearing. The court granted the motion on March 25. The next day, defendant moved to vacate the February 21 and March 18 hospitalization orders and requested that the court release him on conditions until the court held final competency and hospitalization hearings. This motion was addressed that same day, March 26, at a hearing during the time originally scheduled for defendant's "hospitalization hearing." The transcript of the hearing shows that, due to the timing of defendant's motion, the attorney for the State still thought that the hearing was to address defendant's competency. Although the defense attorney and the guardian ad litem seemed to be prepared to address both the competency issue and the release issue, the court refused to consider the substance of the competency issue because defendant was not present at the hearing.

¶ 6. Instead of addressing competency, the court heard arguments from the State and defendant regarding both the issue of release and the issue of when it would

---

[2] Defendant is represented on appeal by a different attorney than his trial counsel.

hold a final competency hearing. Defendant argued that the court did not have authority to keep him hospitalized because the hospitalization orders had been issued for the sole purpose of conducting the psychiatric examinations necessary for the competency determination, and these had already been completed. Further, defendant argued that the competency hearing should not take place until after he had the results of an independent psychiatric examination scheduled for April 7. The State pointed out that the court-ordered psychiatric examinations had been conducted prior to the March 18 hearing, and at that hearing defendant agreed — through counsel — that the hospitalization could continue for fifteen days after expiration of the February 21 order. Based on this agreement, the State contended that the court had authority to keep defendant hospitalized until the March 18 order expired. Because the March 18 order would expire by April 5, the State argued that the competency hearing should occur by that date. Ultimately, the court agreed with the State and decided that the competency hearing would occur on April 1, 2008 and that defendant would not be released from the hospital before then.

¶ 7. At the April 1 competency hearing, the court-appointed psychiatrist, defendant, and two community members who knew defendant testified. After the court heard this testimony, defendant requested that the court leave the evidence open until defendant completed his April 7 independent psychiatric examination. The court expressed a willingness to keep the evidence open so long as defendant would remain hospitalized during this period, but when defendant would not agree to that condition, the court decided to close the evidence. The court then found defendant incompetent and ordered him to return to the hospital pending a hospitalization hearing.

¶ 8. The hospitalization hearing was held on April 15, 2008. Midway through the hearing, the parties reached an agreement that if defendant returned to the state hospital for two weeks, and took medication as directed, the charges against him would be dismissed. The court agreed to delay making a decision on involuntary hospitalization until defendant had the opportunity to follow the treatment plan. On April 22, 2008, the State dismissed the charges, and defendant filed this appeal on May 21, 2008.

¶ 9. Defendant makes three arguments on appeal. First, he claims the district court abused its discretion by ordering him to be hospitalized on February 21 and March 18 without making statutorily required findings and determinations. Second, defendant contends that the court's competency decision was clearly erroneous because it was not supported by any credible evidence. Finally, defendant argues that the court abused its discretion by closing the evidence at the April 1 competency hearing without allowing defendant to submit the results of a scheduled independent psychiatric evaluation. Consistent with our decision in an analogous case regarding civil commitment, we dismiss this appeal because all of these issues are moot.

¶ 10. Vermont has two statutory procedures governing judicial determinations of mental health and orders for involuntary commitment and psychological treatment. At issue in this case is the process detailed in Title 13 for determining a criminal defendant's competence to stand trial. 13 V.S.A. §§ 4814, 4815, 4817, 4820-4822. The other process is for civil commitment of a "person in need of treatment" outside of the criminal justice system. 18 V.S.A. §§ 7504-7505, 7508-7510, 7611-7619. Although the Title 13 procedure is not identical to the Title 18 process, there are substantial similarities between the two in terms of required court hearings to determine competence or need for treatment, temporary commitment pending hearings, and final or-

ders regarding hospitalization or treatment. See *State v. Condrick*, 144 Vt. 362, 364, 477 A.2d 632, 633-34 (1984). Additionally, Title 13 adopts some of the standards used in Title 18. *Id.*; see, e.g., 13 V.S.A. §§ 4821, 4822(a), (b). In a civil case with an analogous procedural history to the present case, we dismissed as moot an appeal brought by a person who had been involuntarily committed for over a month while the State applied to treat him, but was free at the time he appealed and had never been adjudicated as a "person in need of treatment" nor subject to involuntary treatment. *E.S. v. State*, 2005 VT 33, 178 Vt. 519, 872 A.2d 356 (mem.). The same considerations that governed our disposition of *E.S.* guide our decision here.

¶ 11. Cases become moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *State v. J.S.*, 174 Vt. 619, 620, 817 A.2d 53, 55 (2002) (mem.). Here, defendant has been released from custody, and the State has dismissed the charges against him. "Thus, this Court can no longer issue a ruling that would affect [defendant's] custodial status, and the case is moot unless an exception to the mootness rule applies." *E.S.*, 2005 VT 33, ¶ 5; see also *In re M.A.C.*, 134 Vt. 522, 522-23, 365 A.2d 254, 255 (1976) (per curiam). Further, defendant is not seeking damages, nor is he representing a class of similarly situated parties in this action, and we can see no legally cognizable interest defendant has in the outcome of this appeal. See *In re S.H.*, 141 Vt. 278, 280, 448 A.2d 148, 149 (1982).

¶ 12. Although this case is moot, we acknowledge that we have reviewed otherwise moot cases in the context of involuntary hospitalization and treatment under both Title 13 and Title 18 based on two exceptions to the mootness doctrine. The first exception is where the result of the underlying action carries "negative collateral consequences" for the party

appealing the action. *E.S.*, 2005 VT 33, ¶ 6 (quotation omitted). Involuntary hospitalization cases often satisfy this first exception because of the social stigmatization and legal disabilities that may attach to a person who has been committed to a psychiatric hospital. *Id.* ¶ 7 (citing *State v. J.S.*, 179 Vt. at 620, 817 A.2d at 55-56). The second exception to mootness occurs when "the underlying situation is capable of repetition, yet evades review." *Id.* ¶ 6 (quotation omitted). When the person seeking review is likely to be subjected to competency and hospitalization determinations by the State again, we have applied this second exception. See *In re P.S.*, 167 Vt. 63, 68, 702 A.2d 98, 101 (1997).

¶ 13. Neither mootness exception applied to E.S.'s case because of the nature of that case's procedural background. E.S. was initially taken into custody for an emergency examination, under 18 V.S.A. § 7504, on the application of a physician at a Veteran's Administration hospital that E.S. was visiting. After the emergency examination, he was admitted to the state hospital and was held there while the State applied to involuntarily treat him. E.S. requested a hearing under 18 V.S.A. § 7510(a), which allows someone who is being held involuntarily to have a court determine whether the State had probable cause to hold him at the time it admitted him to the state hospital. The § 7510 hearing was held thirteen days after E.S. was first admitted to the hospital. At the hearing, a police officer and the physician treating E.S. both testified in support of the State's case, and the court concluded that the State had probable cause to hold E.S. Just over a month after E.S.'s admission to the state hospital, the State dismissed its application for involuntary treatment, and E.S. was released from the hospital. He returned to his home state of Mississippi and appealed the actions of the family court that had presided over his case.

¶ 14. In *E.S.* we observed that we have used the negative-collateral-consequences

exception to the mootness doctrine to review only those cases where there have been court adjudications of commitment. 2005 VT 33, ¶ 7. As in the *E.S.* case, there was no adjudication of commitment here. Adjudications of commitment are of a different nature than orders for commitment pending further hearings, and it was the latter that governed E.S.'s and defendant's hospitalizations. Adjudications of commitment, under Title 13 or Title 18, occur only after the trial court determines that the person is "in need of treatment" because she is mentally ill and poses a danger to herself or others. 13 V.S.A. § 4822(a); 18 V.S.A. §§ 7101(17), 7611. But a court can order commitment pending a hearing before making that determination. Such temporary commitment is permitted as long as the State had probable cause to believe the person committed was "a person in need of treatment" at the time he was admitted to the hospital, 18 V.S.A. § 7510(a), or where the court determines that the state hospital is the least restrictive environment sufficient to complete a psychological examination, 13 V.S.A. § 4815(a), (b), (g). For these reasons, temporary involuntary commitment does not carry the stigma of adjudicated commitment, and any stigma it does carry does not overcome the mootness bar. See *E.S.*, 2005 VT 33, ¶ 7. Thus, defendant's temporary — albeit extended — court-ordered commitment cannot save his appeal from dismissal.

¶ 15. In addition to the lack of a commitment adjudication in E.S.'s case, we concluded that any negative consequences that may have attached to E.S. as a result of the Title 18 proceedings were "not sufficient to avoid mootness" because he "never went through a full hearing, was never formally adjudicated mentally ill and was never under an order of involuntary treatment." *Id.* Similarly, in this case, defendant was not adjudicated mentally ill, and the court never ordered involuntary treatment. On the other hand, defendant did undergo a full competency

hearing, and was determined incompetent to stand trial. But a competency determination under Title 13 is not the same as an adjudication of mental illness for purposes of involuntary commitment or treatment in either the Title 18 or Title 13 context.

¶ 16. The first important distinction between competency determinations and commitment decisions is that the former are made for the specific purpose of protecting criminal defendants' due process rights to a fair trial. *State v. Beaudoin*, 2008 VT 133, ¶ 8, 185 Vt. 164, 970 A.2d 39. Because the competence decision is focused on defendants' due process rights — not, as in the commitment decision, on their health or safety, or the public safety — the effects of competence decisions are limited to the realm of the criminal court proceedings. Adjudications of incompetency, without more, carry no collateral consequences for defendants' lives outside of their criminal cases. Further, a competency determination is not considered absolutely final during the life of a defendant's pretrial and trial proceedings; either the defendant or the State may move for a new hearing and the trial court may, within its discretion, change its competency decision based on new evidence. 13 V.S.A. § 4817(c); *Beaudoin*, 2008 VT 133, ¶¶ 14-15. Thus, had defendant not voluntarily settled this matter, he could have moved for a new competence hearing after he underwent his independent psychological evaluation, and potentially convinced the trial court to reverse its competence determination.

¶ 17. In addition to the temporary and case-specific nature of competency determinations, they are substantively different from determinations of mental illness made for the purpose of involuntary commitment. Unlike the requirements for commitment decisions, mental illness is not a necessary or sufficient condition for incompetency. The statutory language in Title 13 indicates that defendants may be

incompetent for reasons independent of mental illness. See 13 V.S.A. § 4820(2) (where a person is found to be incompetent "due to a mental disease or mental defect," the court must hold a hearing to determine whether he or she should be committed); *id.* § 4817(b) ("where the court has reason to believe that such person may be incompetent to stand trial due to a mental disease or mental defect," competency hearings shall not be held until the defendant is examined by a psychiatrist). And our case law demonstrates that mentally ill or mentally disabled defendants can be competent to stand trial. See *State v. Brown*, 2005 VT 104, ¶¶ 4, 19-23, 179 Vt. 22, 890 A.2d 79 (where psychiatrist reported that defendant suffered from mental illness, but was competent for trial, this Court upheld trial court's ruling that the defendant knowingly and intelligently waived the right to counsel); see also *Beaudoin*, 2008 VT 133, ¶¶ 7, 17.

¶ 18. The issue of trial competency focuses on different criteria than the "person in need of treatment" determination governing commitment adjudications. 18 V.S.A. §§ 7101(17), 7611; 13 V.S.A. § 4822. As indicated above, for someone to be a "person in need of treatment," a court must find that the person "is suffering from mental illness and, as a result of that mental illness, his or her capacity to exercise self-control, judgment or discretion in the conduct of his or her affairs and social relations is so lessened that he or she poses a danger of harm to himself, to herself, or others." 18 V.S.A. § 7101(17). By contrast, "[t]o be competent to stand trial, a defendant must have 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.' " *State v. Tribble*, 2005 VT 132, ¶ 10, 179 Vt. 235, 892 A.2d 232 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Some of the issues relevant to

a criminal defendant's competency are whether the "defendant kn[ows] the charges against him and their relative severity," whether he can "describe the basic functions of a trial . . . distinguish between guilty and not guilty," whether he knows "the role of his attorney and the prosecutor," and whether he understands "the concept of plea bargaining and his right to appeal." *Beaudoin*, 2008 VT 133, ¶ 13. Surveying these factors, there is no necessary precondition of mental illness or being a danger to self or others for a defendant to qualify as incompetent to stand trial. Thus, being adjudged incompetent for trial under Title 13 does not carry the same stigma as being adjudicated mentally ill under Title 18, or of being ordered involuntarily committed under either statute. In itself, a court's competency determination is not sufficient to overcome mootness.

¶ 19. It is relevant to note that in this case the court's competency order reflects that it found defendant incompetent and planned to hold a hospitalization hearing pursuant to 13 V.S.A. § 4820(4). Hospitalization hearings follow a trial court's determination of incompetence only where the court has found the defendant to be "incompetent . . . due to a mental disease or mental defect." *Id.* § 4820(2). Thus, defendant might argue here that the court's order finding him incompetent and expressing its plan to hold a commitment hearing is more stigmatizing than a competency determination alone. But this detail is not enough to create the negative collateral consequences in defendant's life that could override this case's mootness.

¶ 20. The second mootness exception, "capable of repetition yet evading review," is somewhat of a closer call in this case than in *E.S.* E.S. was a Mississippi resident who returned to Mississippi upon release from the Vermont State Hospital. Based on those facts, we were able to conclude that E.S. was very unlikely to be

subjected to another application by the State to commit or treat him in Vermont. In this case, defendant's status as a Vermont resident makes it more reasonable to suppose that this situation would be repeated. However, defendant did not cite any evidence, nor did he offer any reasons, to show or explain why this mootness exception applies in his case.

¶ 21. The "capable of repetition yet evading review" exception "applies only where: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *State v. Rooney*, 2008 VT 102, ¶ 11, 184 Vt. 620, 965 A.2d 481 (mem.) (quotations omitted). In this case, we can assume for the sake of argument that the first prong of the test is satisfied. But the second prong is more problematic. In previous mental-health cases we have applied this exception where the people subject to the involuntary treatment or commitment had a history of intervention by the State of Vermont due to mental health issues. *In re P.S.*, 167 Vt. at 68, 702 A.2d at 101. However, the burden is on the party appealing the action to show either a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party." *S.H.*, 141 Vt. at 281, 448 A.2d at 149-50 (quotations omitted). The mere fact that the State has involuntarily committed a person on one occasion is not sufficient to satisfy the second prong of the "capable of repetition" test. *Id.* at 281, 448 A.2d at 150.

¶ 22. The record in this case shows that defendant reported two or three attempts to place him in psychiatric hospitals in New Hampshire and that he had been charged with a few minor crimes in New York and Vermont, but there is no evidence that the State of Vermont was ever involved with defendant's mental health until his arrest in this case. Even then, it was defendant's own attorney who raised the issue of competence. This lack of any prior history of the State of Vermont's involvement with defendant's mental health tends to show that there is no demonstrated probability that defendant will be subject to another state intervention here. Additionally, many of the issues defendant raises on appeal relate to court decisions that were based on the specific factual circumstances existing at the time of the hearings. Fact-specific issues are not generally "capable of repetition," and we will not apply this mootness exception to review claims involving court findings that relate to specific dates and circumstances. See, e.g., *State v. Gundlah*, 160 Vt. 193, 196, 624 A.2d 368, 370 (1993) (declining to apply the exception where there was no reasonable expectation of repetition of the case's fact pattern). Consequently, we find no reason to apply this exception to the mootness rule here.

*Dismissed.*

Motion for reargument denied October 21, 2009.