NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 28

No. 23-AP-332

In re M.M., Juvenile

Supreme Court

On Appeal from
Superior Court, Rutland Unit,
Family Division

March Term, 2024

David A. Barra, J. (Findings and Order); Cortland Corsones, J. (Disposition Order)

Sarah Star of Sarah R. Star P.C., Middlebury, for Appellant Father.

Sharon Gentry of Costello, Valente & Gentry, P.C., Brattleboro, for Appellant Mother.

Ian Sullivan, Rutland County State's Attorney, and Kayley N. Olson, Deputy State's Attorney, Rutland, for Appellee State.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **REIBER, C.J.** Mother and father appeal an order adjudicating their daughter M.M. a child in need of care or supervision (CHINS). The State argues that the issues on appeal are moot because the family division's jurisdiction terminated with the return of unconditional, unsupervised custody to parents at disposition. We conclude that this case does not present a live controversy or fall within a recognized exception to the mootness doctrine and therefore grant the State's motion to dismiss.

¶ 2. The record reflects the following. On April 3, 2023, the State filed a petition seeking a determination that M.M., then eleven years old, was CHINS in that she was without

proper parental care or subsistence, education, medical, or other care necessary for her well-being. See 33 V.S.A. § 5102(3)(B). The supporting affidavit alleged that M.M. had expressed homicidal and suicidal ideation involving a gun, and parents were resisting recommended mental-health services and efforts to create a safety plan ensuring she could not access firearms in their home. M.M. was placed in the emergency custody of the Department for Children and Families (DCF) and then returned to parents' care under a conditional custody order (CCO). Among other things, the CCO required parents to work with DCF to arrange appropriate mental-health services for M.M. and follow a safety plan to prevent her from accessing dangerous weapons.

¶ 3. A hearing on the merits of the CHINS petition concluded in August 2023. In a written decision, the trial court noted that parents had successfully abided by the terms of the CCO since April 4 but determined that M.M. was CHINS at the time the petition was filed on April 3.

¶ 4. In October 2023, DCF filed a case plan recommending that custody be returned to parents. It indicated that parents continued to comply with the CCO and M.M. had made no other threats to harm herself or others. Following a disposition hearing later that month, the court vacated the CCO, returned custody to parents without conditions or protective supervision, and closed the case.

¶ 5. Parents subsequently brought this appeal of the merits adjudication.[1] They argue that: (1) the factual findings were insufficient to support the conclusion that M.M. was CHINS; (2) the family division referenced an inapplicable legal standard, casting doubt on whether it correctly analyzed the matter before it; and (3) the decision should be reversed because the State did not instead attempt to secure weapons in the home through an extreme-risk protection order under 13 V.S.A. § 4053. The State contends that the disposition order mooted these issues because

_____

[1] They could not pursue a direct appeal as of right until after the disposition order issued because a merits adjudication "is not a final order subject to appeal separate from the resulting disposition order." 33 V.S.A. § 5315(g).

2

the family division's jurisdiction over a child not subject to another juvenile proceeding "terminate[s] automatically . . . . upon an order of the court transferring legal custody to a parent, guardian, or custodian without conditions or protective supervision." 33 V.S.A. § 5103(d)(2).

¶ 6. "A case becomes moot—and this Court loses jurisdiction—when there no longer is an actual controversy or the litigants no longer have a legally cognizable interest" in its outcome. Paige v. State, 2017 VT 54, ¶ 7, 205 Vt. 287, 171 A.3d 1011; see also Holton v. Dep't of Emp. & Training, 2005 VT 42, ¶ 14, 178 Vt. 147, 878 A.2d 1051 (explaining that mootness doctrine arises from Vermont Constitution, which limits jurisdiction of Vermont courts to "the determination of actual, live controversies between adverse litigants"). Thus, even if a case "presented an actual controversy in the lower court, we may not consider the issues unless they remain live throughout the appellate process." State v. Rooney, 2008 VT 102, ¶ 9, 184 Vt. 620, 965 A.2d 481 (mem.).

¶ 7. Father argues that the trial court retains jurisdiction to modify or revoke the disposition order while the appeal is pending and, as a result, the case is not moot.[2] Assuming father is correct about the trial court's jurisdiction, his suggestion that the State might seek modification or revocation of the disposition order if M.M.'s mental-health status changes or parents are perceived as being uncooperative with DCF does not present an actual controversy. Instead, it represents "the kind of hypothetical factual situation . . . the Vermont Constitution does not authorize us to review." In re Blue Cross, 2022 VT 53, ¶ 8, 217 Vt. 285, 288 A.3d 160

---

[2] In support of this argument, he cites Vermont Rule of Appellate Procedure 8(c)(2), which provides that the superior court retains jurisdiction to modify or vacate certain orders in juvenile proceedings pending appeal. He also points to In re C.L.S., 2021 VT 25, 214 Vt. 379, 253 A.3d 443, in which we analyzed a subsection of § 5103(d) providing that after parental rights are terminated, the family division's jurisdiction over a child not subject to another juvenile proceeding ends automatically upon the child's adoption. See 33 V.S.A. § 5103(d)(3). In part because an appeal is itself a juvenile proceeding, we held that the family court retains jurisdiction during the pendency of an appeal from a termination decision even if DCF pursues adoption in the meantime. In re C.L.S., 2021 VT 25, ¶ 17. Father contends that this conclusion applies with equal force to § 5103(d)(2).

(quotation omitted) (rejecting insurer's argument that appeal from review of locked rates was not moot because future rate-review proceedings could result in financial injury).

¶ 8. Consistent with 33 V.S.A. § 5103(d)(2), the disposition order marked the conclusion of the underlying juvenile proceeding. As a result, the CHINS adjudication has no current impact on the family division's authority to make orders regarding M.M.'s legal custody. See 33 V.S.A. § 5318(a) ("At disposition, the court shall make such orders related to legal custody for a child who has been found to be [CHINS] as the court determines are in the best interests of the child."); cf. In re P.S., 167 Vt. 63, 67, 702 A.2d 98, 100 (1997) (holding that where hospitalization order on appeal "no longer has any effect on [appellant's] commitment status or residence . . . the case is moot unless it fits within an exception to the mootness doctrine"). Because the reversal or remand parents seek would not provide them with "effective relief," the case is moot unless an exception to the mootness doctrine applies. In re Moriarty, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991) (explaining that case is moot if we "can no longer grant effective relief" (quotation omitted)).

¶ 9. "We have recognized two exceptions to the mootness doctrine: (1) when negative collateral consequences are likely to result from the action being reviewed and (2) when the underlying situation is capable of repetition, yet evades review." Handy v. Fiske, 2023 VT 46, ¶ 5, __ Vt. __, 308 A.3d 544 (mem.). Parents argue that this appeal fits within both exceptions.

¶ 10. Under the first exception, we "will consider a case that no longer involves a live controversy if the challenged action will continue to pose negative consequences for the appellant if it is not addressed." Hinkson v. Stevens, 2020 VT 69, ¶ 18, 213 Vt. 32, 239 A.3d 212 (quotation omitted). The consequences at issue must be "specific to the appellant," Paige, 2017 VT 54, ¶ 16, and a "mere possibility" that they will come to pass in the absence of a favorable decision is insufficient to sustain review, Blue Cross, 2022 VT 53, ¶ 20 (quotation omitted). We have applied the exception in cases involving involuntary-hospitalization orders, post-conviction challenges,

4

and anti-stalking orders, emphasizing that these unique situations may have continuing effects on the party seeking review, "including consequences relating to potential stigma associated with the underlying order or conviction, reputational harms, and diminished opportunities to live a law-abiding life such as difficulties finding employment, housing, and education." Id.; see, e.g., Hinkson, 2020 VT 69, ¶ 21 ("In this case, defendant has established an individualized likelihood of ongoing reputation harm based on, among other considerations, the numerous articles already published about the stalking order and surrounding events.").

¶ 11. Opportunities for similar consequences to arise in connection with a CHINS adjudication are limited because, "[s]ubject to a narrow set of exceptions" set forth at 33 V.S.A. § 5117, "records of juvenile judicial proceedings . . . are confidential." In re H.H., 2020 VT 107, ¶ 16, 214 Vt. 1, 251 A.3d 560. However, parents suggest that records pertaining to the adjudication could be accessed under one or more of the § 5117 exceptions, resulting in adverse collateral impacts.

¶ 12. First, parents contend that they could be substantiated and listed on the Child Protection Registry based on the adjudication, which is accessible to DCF and the Human Services Board in such proceedings under § 5117(b)(1)(H). Substantiation occurs where DCF investigates a report of child abuse or neglect and concludes that it "is based upon accurate and reliable information that would lead a reasonable person to believe that [a] child has been abused or neglected." 33 V.S.A. § 4912(16). "Substantiated reports are placed in the Child Protection Registry, the purpose of which is to safeguard children by allowing certain individuals working in fields involving contact with children to access a list of persons substantiated for child abuse or neglect." In re H.H., 2020 VT 107, ¶ 8 (citing 33 V.S.A. §§ 4911(5), 4916(a)(1), 4919)).

¶ 13. Parents have not identified the requisite connection between the possibility of substantiation and the adjudication they seek to appeal. See Paige v. State, 2013 VT 105, ¶ 13, 195 Vt. 302, 88 A.3d 1182 (explaining that absent "direct link" between challenged orders and

5

purportedly negative collateral consequences suffered by appellant, exception is inapplicable), cert. denied sub nom. Paige v. Vermont, 572 U.S. 1115 (2014). The record indicates that the report DCF received in this case was accepted as an assessment. See 33 V.S.A. § 4915(c) (setting forth factors for DCF to consider in deciding whether to conduct assessment). In contrast to an investigation, an assessment "does not result in a formal determination as to whether the reported abuse or neglect has occurred." Id. § 4912(2) (defining "assessment" as DCF response focusing "on the identification of the strengths and support needs of the child and the family and any services they may require to improve or restore their well-being and to reduce the risk of future harm"). Where an "assessment is closed without resulting in an investigation," DCF must document the outcome, but "there shall be no finding of abuse, neglect, or exploitation." Id. § 6906(b)(3). Parents do not allege that DCF initiated an investigation at any time but speculate that it may later do so because they could be collaterally estopped from contesting issues resolved in the adjudication in a substantiation proceeding.

¶ 14. We have recognized that "collateral estoppel may preclude relitigation, in a subsequent substantiation proceeding, of issues necessarily and essentially determined in an earlier CHINS adjudication." In re H.H., 2020 VT 107, ¶ 23 (quotation omitted). However, because we are without jurisdiction to review the CHINS adjudication, none of the issues resolved therein can have preclusive effect. See Daiello v. Town of Vernon, 2018 VT 17, ¶¶ 15-16, 207 Vt. 139, 184 A.3d 1192 (holding that collateral estoppel cannot be applied "with respect to any finding that was untested on appellate review" because "a factual issue cannot, consistent with the statutory right to appellate review, be said to have been finally adjudicated when the appellant has been precluded from obtaining the appellate review which he sought and to which he would have been entitled if the fact had been material" (quotation omitted)); 18 C. Wright et al., Federal Practice and Procedure § 4421 (3d ed. 2023) (setting forth "general principle that an appellate disposition on grounds that foreclose review of other grounds defeats use of the unreviewed grounds for

6

preclusion"). As a result, parents have not shown a "direct link" between the adjudication and the possibility of substantiation. See Paige, 2013 VT 105, ¶ 13.

¶ 15. Next, parents suggest that the adjudication could adversely affect them if they have any future involvement with DCF. See 33 V.S.A. § 5117(b)(1)(I) (providing that records of juvenile judicial proceedings are available to DCF). They note that they have been licensed as foster and adoptive parents in the past and argue that the merits order could bar them from this role in the future, should they seek it. They also posit that the order is a historical factor that DCF may weigh in deciding whether to investigate future reports about the family, should it receive any. These "mere possibilit[ies]" are too remote to sustain application of the exception. Blue Cross, 2022 VT 53, ¶ 20 (quotation omitted)); see also Handy, 2023 VT 46, ¶ 7 (explaining that exception does not apply based on "purely speculative" consequences).

¶ 16. Finally, parents argue that negative collateral consequences could result if records pertaining to the CHINS adjudication are introduced in their divorce case as relevant to legal and physical parental rights and responsibilities and parent-child contact. See 33 V.S.A. § 5117(c)(1) ("Upon motion of a party in a divorce . . . proceeding related to parental rights and responsibilities for a child or parent-child contact, the court may order that court records in a juvenile proceeding involving the same child or children be released to the parties in the divorce proceeding."). In their briefs and in opposition to the State's motion to dismiss, parents represented that these issues were being contested in their domestic case. We take judicial notice that, shortly thereafter, parents stipulated to an award of sole legal and physical parental rights and responsibilities to mother with parent-child contact for father, and the court entered a final order based on their agreement. V.R.E. 201(b), (c) (providing that court may take judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" on its own motion); see also, e.g., Miller v. Miller, 2008 VT 86, ¶ 31 n.11, 184 Vt. 464, 965 A.2d 524 (taking judicial notice of family court order issued during pendency of appeal and fact that party

7

was sentenced by federal district court). As a result, the CHINS adjudication has no bearing on the resolution of custody in parents' divorce case. And while parents argue that the adjudication could be introduced as evidence if either seeks to modify the final order in the future, they do not explain why it would be relevant under the applicable change-of-circumstances analysis given their stipulation. See 15 V.S.A. § 668(a) (providing that parental rights and responsibilities and parent-child contact orders may be modified only "upon a showing of real, substantial, and unanticipated change of circumstances").

¶ 17. Parents have not identified a sufficient prospect that resolution of the issues on appeal will impact them. See Paige, 2017 VT 54, ¶ 15 (describing collateral-consequences exception as "natural extension of the concept that the central question of all mootness problems is whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties" (quotation omitted) (brackets omitted)). As a result, the negative-collateral-consequences exception does not apply.

¶ 18. In the alternative, parents argue that their appeal falls within the exception for issues capable of repetition yet evading review because if appeals from a merits adjudication become moot whenever custody is returned following compliance with a DCF safety plan, then CHINS petitions may be used to coerce compliance with such plans in the future. The exception applies only where two conditions are satisfied: (1) "the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration"; and (2) "there must be a reasonable expectation that the same complaining party will be subjected to the same action again." Price v. Town of Fairlee, 2011 VT 48, ¶ 24, 190 Vt. 66, 26 A.3d 26. To meet the second criteria, parents "must show that it is more than just 'theoretically possible' " that the issues they seek to challenge will be repeated; rather, they must identify "a 'demonstrated probability' that [they] will become embroiled again in this same situation." Paige, 2017 VT 54, ¶ 13 (quoting In re Green Mountain Power Corp., 148 Vt. 333, 335, 532 A.2d 582, 584 (1987)).

¶ 19.    Parents do not specifically address either prong of the test.  Without assessing the first, we conclude that they have not met the second.  Parents' generalized argument fails to demonstrate a probability that <u>they</u> will be subjected to the same action again.  <u>In re Vt. State Emps.' Ass'n, Inc.</u>, 2005 VT 135, ¶ 12, 179 Vt. 578, 893 A.2d 338 (mem.) (concluding there was no reasonable expectation that appellant could be subjected to challenged action again and explaining that "[w]e will not address a moot case merely because others will find themselves in a similar position" (quotation omitted)).  The issues parents seek to raise on appeal are specific to the factual circumstances the court found to exist at the time the State filed its petition.  As we have explained, "[f]act-specific issues are not generally 'capable of repetition,' and we will not apply this mootness exception to review claims involving court findings that relate to specific dates and circumstances."  <u>State v. Curry</u>, 2009 VT 89, ¶ 22, 186 Vt. 623, 987 A.2d 265 (mem.).

¶ 20.    Because parents have not shown that the CHINS adjudication subjects them to negative collateral consequences or that the issues are capable of repetition but evading review, they have not met "the exceptional thresholds necessary for us to reach the merits in a moot case."  <u>Blue Cross</u>, 2022 VT 53, ¶ 22.

<u>Appeal dismissed as moot</u>.

FOR THE COURT:

_____

Chief Justice