2005 VT 135

**In re Grievance of VERMONT STATE EMPLOYEES' ASSOCIATION, INC.**

[893 A.2d 338]

No. 04-140

¶ 1. December 27, 2005. In this appeal, we are asked to decide if the Labor Rela-tions Board erred in dismissing a grievance filed by the Vermont State Employees' Association, which concerned the State's investigation of employee Jules Peteani. VSEA argues that the State denied Peteani his right to meaningful union representation during an investigative interview and violated the parties' collective bargaining agreement by failing to provide Peteani with supplemental written notice of additional charges pending against him once he had been temporarily relieved from duty. The Board rejected these arguments. On appeal, VSEA asserts that: (1) the Board's conclusion that Peteani was afforded his right to meaningful representation is not supported by its findings; and (2) the Board erred in interpreting the terms of the parties' collective bargaining agreement. We find the first issue moot, and we find no error in the Board's interpretation of the parties' contract.

¶ 2. Jules Peteani worked as a community correctional officer for the Department of Corrections. In June 2001, the Department began an investigation into Peteani's alleged violation of a work rule that prohibited romantic or sexual relationships between employees and offenders under Department control or supervision. The Department notified Peteani that it was investigating his relationship with offender N.F. The Department conducted two investigative interviews with Peteani, the second of which VSEA challenges in this appeal. During the second interview, in December 2001, Peteani was asked whether he had engaged in any inappropriate conduct with offenders other than N.F. Peteani's union representative, Lucinda Kirk, protested that she had not been informed of any new allegations against Peteani and asked that the interview be stopped. The State eventually allowed Kirk five minutes to consult privately with Peteani before questioning resumed. The State

also allowed Peteani and Kirk to meet privately several times before the interview concluded. In February 2002, Peteani resigned from state employment.

¶ 3. In June 2002, VSEA filed a grievance with the Board, alleging that the State had violated the collective bargaining agreement in conducting its investigation of Peteani. VSEA first argued that the State had violated Article 14, section 7 of the contract, which gives an employee the right to have a union representative present during any meetings with his employer that may lead to discipline. VSEA asserted that the State had violated this provision by refusing to allow Peteani to freely consult with Kirk during the interview.

¶ 4. VSEA also alleged that the State had violated Article 14, section 9 of the contract. Section 9 provides that an employer may relieve an employee temporarily from duty with pay for up to thirty work days to allow the employer to investigate charges and allegations against the employee. It requires that:

> Employees temporarily relieved from duty shall be notified in writing within twenty-four (24) hours with specific reasons given as to the nature of the investigation, charges and allegations. Notices of temporary relief from duty with pay shall contain a reference to the right of the employee to request representation by VSEA, or private counsel in any interrogation connected with the investigation or resulting hearing.

Section 9 allows the employer to extend the period of temporary relief from duty with the concurrence of the Commissioner of Personnel. Although the Department provided Peteani with written notice when it placed him on temporary relief from duty, VSEA asserted that the Department was obligated to supplement this written notice when it extended Peteani's relief-from-duty period beyond thirty days. VSEA also asserted that, under section 9, the State was obligated to provide Peteani with written notification of its reasons for holding a second investigative interview. Finally, VSEA argued that Peteani had the right to VSEA representation under section 9 during any investigatory interrogation, and he was denied effective representation because he had not been allowed to consult with Kirk throughout the second interview.*

¶ 5. In its request for relief, VSEA asked the Board to determine that the State had violated the contract and the parties' past practice; order the State to cease and desist from engaging in such conduct; order that any evidence obtained by the State in similar investigative meetings under similar circumstances be rendered inadmissible for purposes of imposing discipline and/or corrective action against the employees; and order that any employee who suffered an adverse action as a result of any of the State's contract violations be made whole.

¶ 6. After a hearing, the Board dismissed the grievance. The Board first rejected VSEA's assertions that the State had violated section 9 of the con-

---

* VSEA also asserted that the State had violated Article 1 and Article 3 of the contract by refusing to recognize VSEA as Peteani's representative at the investigative interview, and it asserted that the State's refusal to allow Kirk to consult with Peteani also violated the parties' past practice. The Board rejected these claims, and VSEA has not pursued them on appeal. VSEA also filed an unfair labor practice charge against the State, which the Board dismissed in February 2004.

tract, explaining that section 9 did not apply to VSEA's representation of Peteani at the second investigatory interview. The Board found that the Department had complied with the requirements of this section when it provided Peteani written notice as to why he was being temporarily relieved from duty and advised him of his right to representation. This ended the provision's applicability, and its requirements were not resurrected when the Department held a subsequent interview while Peteani remained on temporary relief from duty. To conclude otherwise, the Board explained, would improperly read terms into the parties' contract that did not arise by necessary implication.

¶ 7. Turning to the central issue raised by the grievance, the Board considered whether Peteani had been denied his right to meaningful and effective representation in violation of Article 14, section 7. As noted above, under section 7, an employee has the right, at his request, to have a union representative accompany him to any meeting with his employer where he will be required to give oral or written statements on an issue that involves him and which may lead to discipline against him. The Board discussed the limits of this right, finding that it included the employee's right to consult with his union representative prior to an investigative interview. To effectuate this right, the Board explained that an employee and his representatives were entitled to have some indication of the subject matter of an investigation, although the employer need not reveal its case or even the specifics of the misconduct to be discussed. Instead, the employer need only provide a *"general statement as to the subject matter of the* interview, which identifies to the employee and his representative the misconduct for which discipline may be imposed." *Pac. Tel. & Tel. Co.*, 262 N.L.R.B. 1048, 1049 (1982), *aff'd, Pac. Tel. & Tel.*

*Co. v. NLRB*, 711 F.2d 134 (9th Cir. 1983). The Board also discussed the role of a union representative during an investigative interview.

¶ 8. The Board found that in November 2001 the Department had informed Peteani that it was "continuing its investigation" into his apparent violation of workplace rules, and that Christine Boraker had been assigned to conduct an investigative interview with him. It explained that this notice did not indicate whether the interview would involve a continued examination of Peteani's relationship with N.F., or whether the investigation would be expanded to discuss other matters. The Board found that a miscommunication then occurred between Kirk and Boraker over the nature of any new allegations against Peteani. As a result, Kirk did not know that Peteani would be asked about other female offenders under his supervision, and she was unable to meaningfully consult with Peteani on this subject before the interview began. Thus, the Board explained, when this topic arose during the interview, Boraker had no reasonable basis to deny Kirk's request for a break. The Board concluded, however, that this temporary harm was remedied when Boraker stopped the interview to discuss the matter with Department of Personnel General Counsel David Herlihy. As a result of that discussion, Peteani had been allowed to consult with Kirk for five minutes before he was asked to answer any questions about other female offenders. The Board found that VSEA had not presented sufficient evidence to support a conclusion that this consultation had been insufficient to allow Kirk to effectively represent Peteani during the interview. The Board found its conclusion bolstered by Boraker's decision, at the conclusion of her questioning, to allow Peteani and Kirk to meet privately and present additional information. It therefore concluded that the State had not

violated section 7 of the contract. VSEA appealed.

¶ 9. We begin by addressing the issue of mootness, an argument raised by the State below but apparently not pursued. As noted above, Peteani resigned from state employment in February 2002, and VSEA, not Peteani, is the grievant in this case. While VSEA is plainly entitled to file a grievance expressing its dissatisfaction with aspects of employment or working conditions under the collective bargaining agreement, it must establish an "injury in fact to a protected legal interest or the threat of an injury in fact." *In re Boocock*, 150 Vt. 422, 424, 553 A.2d 572, 574 (1988). While VSEA's legal interests were implicated in certain claims contained in its grievance, it has not pursued all of these claims on appeal.

¶ 10. We conclude that the first issue raised by VSEA in this appeal is moot. Generally, "a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *In re Moriarty*, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991) (quotations omitted). There is no question that Peteani was entitled to meaningful union representation under section 7, nor do the parties seriously dispute the scope of this right on appeal. Indeed, the Board recognized, as VSEA argues, that under section 7 the State must provide employees with sufficient information about the nature of an investigative interview to allow for meaningful consultation. The Board found that the error here stemmed largely from a miscommunication between the parties, and it found the error harmless in light of corrective action taken by the State. While we agree that a five-minute hallway consultation might be insufficient to allow for meaningful and effective union representation during an investigative interview, we need not decide whether the Board erred in employing a harmless error analysis. Even if we were to find

that the Board erred, there is no effective relief that this Court can provide VSEA under the circumstances. *Id.* ("A case is moot if the reviewing court can no longer grant effective relief.") (quotation omitted).

¶ 11. First, Peteani has resigned, he is not a party to this case, and the disciplinary investigation has concluded. See *id.* at 162-64, 588 A.2d at 1064-65 (dismissing appeal as moot when grievant had resigned from state employment during pendency of appeal and Court would be unable to grant any effective relief). While VSEA may argue that it has suffered a legal injury due to the State's alleged violation of the collective bargaining agreement, we cannot discern any meaningful relief that this Court could provide VSEA as the result of such a violation. The facts presented in this case are highly unusual, and it is improbable that they would recur. We cannot find that an actual live controversy exists merely because VSEA seeks to prevent the State from engaging in similar behavior in the future. "Where future harm is at issue, the existence of an actual controversy turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance." *Id.* at 163, 588 A.2d at 1064 (quotations omitted). There is no indication that the State regularly engages in such behavior or that it is likely to do so in the future. Indeed, the problem here stemmed from a miscommunication. VSEA is speculating about potential future harm.

¶ 12. We are not persuaded that any of the exceptions to the mootness doctrine apply. The underlying situation is not one that is capable of repetition yet evading review. "This exception applies only if: '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the

same complaining party would be subjected to the same action again.'"*In re P.S.*, 167 Vt. 63, 67-68, 702 A.2d 98, 101 (1997) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). The first criterion is not satisfied, and as noted above, given the unusual facts involved in this case, there can be no reasonable expectation that VSEA will be subjected to the same action again. See *In re Green Mountain Power Corp.*, 148 Vt. 333, 335, 532 A.2d 582, 584 (1987) (explaining that a "reasonable expectation" of being subjected to the same action again "requires more than just a theoretical possibility of the same event happening in the future"; party must show a "demonstrated probability that it [will] become embroiled again in the same controversy"). We will not address a moot case merely because "others will find themselves in a similar position." See *In re Moriarty*, 156 Vt. at 164, 588 A.2d at 1065 (explaining that Vermont had not adopted a "general public-interest exception to the mootness doctrine"). If an actual controversy arises, the parties will have the opportunity to litigate it. Therefore, because we conclude that the question of whether Peteani was denied his right to meaningful representation is moot, we dismiss this portion of the appeal.

¶ 13. We reach a different conclusion with respect to the Board's interpretation of section 9 of the contract. VSEA appears to have a legally cognizable interest in the resolution of this issue, and it appears likely to arise again. We therefore address the issue on the merits. VSEA argues that the plain language of section 9 requires the State to provide supplemental written disclosures to an employee who has been temporarily relieved from duty when it expands its investigation to include new allegations. We disagree.

¶ 14. As previously noted, section 9 states that "[e]mployees temporarily relieved from duty shall be notified in writing within twenty-four (24) hours with specific reasons given as to the nature of the investigation, charges and allegations." The Board found that this provision did not impose an obligation upon the State to provide supplemental written disclosures to an employee who had been temporarily relieved from duty. We accord substantial deference to the Board's construction of the parties' collective bargaining agreement, *In re Gregoire*, 166 Vt. 66, 72, 689 A.2d 431, 435 (1996), and we find no error here. Where, as here, the language of a contract is clear, the parties are presumed to be bound by the plain and ordinary meaning of the language used. See *id.* at 73, 689 A.2d at 435. As the Board explained, the Department complied with section 9 when it provided Peteani with written notice that it was contemplating dismissal due to Peteani's inappropriate relationship with a female offender, he had a right to representation during proceedings connected with the Department's action, and he was temporarily relieved from duty without pay. The additional obligation suggested by VSEA is not found in the plain language of section 9, nor does it arise by necessary implication. See *In re Stacey*, 138 Vt. 68, 71, 411 A.2d 1359, 1361 (1980) (stating that "the Court will not read terms into a contract, unless they arise by necessary implication"). The Board did not err in its interpretation of this provision.

*Affirmed in part and dismissed in part as moot.*