2008 VT 102

**STATE of Vermont v. Brian ROONEY (Gannett Vermont Publishing, Inc. d/b/a Burlington Free Press and Mt. Mansfield Television, Inc. d/b/a WCAX TV, Intervenors-Appellants)**

[965 A.2d 481]

No. 08-067

¶ 1. August 13, 2008. The State of Vermont — joined by defendant Brian Rooney — moves to dismiss the above-captioned appeal on the grounds of mootness. The appeal concerns the trial court's denial of access to certain audio and video tapes admitted into evidence at a suppression hearing in a well-publicized aggravated murder case to appellants Burlington Free Press and WCAX TV (the Media). Because the trial court lifted

its temporary seal of the exhibits on May 22, 2008 — after the conclusion of trial — the appeal is moot, and we therefore grant the State's motion to dismiss.

¶ 2. The facts of the case are as follows. Brian Rooney was arraigned in October 2006 for the aggravated murder of former University of Vermont student Michelle Gardner-Quinn. In October 2007, Rooney filed a motion to suppress "various statements [he] made to police officers between October 7 and October 13, 2006 on a variety of grounds." The court commenced a suppression hearing, open to the public and the Media, on January 14, 2008. On the second day of the hearing, representatives of the Media submitted a written request to the court to allow them to copy "any and all audio and video recordings admitted into evidence during this week's motion hearing." On January 16, 2008, Rooney filed a memorandum in opposition to the Media's request for access to the exhibits, arguing that greater dissemination of the information contained in the exhibits by the Media, in an already widely publicized case, would further erode his opportunity for a fair trial. Later that same day, the Chittenden District Court Manager, as custodian of records, denied the Media's request for access to the audio and video recordings, citing Judge Kupersmith's decision, on the record, to withhold the exhibits "in order to protect . . . Rooney's right to a fair trial."

¶ 3. On January 23, 2008, the Media appealed the decision to the district court pursuant to the Vermont Rules for Public Access to Court Records, arguing that none of the exceptions to public access enumerated in Rule 6 applied to their request for the exhibits. See V.R.P.A.C.R. 6(h) (providing appeal rights from decision of custodian). A hearing on the appeal was held before Judge Crawford, presiding judge of the district court, on January 28, 2008. Judge Crawford issued an order the same day, in which he determined that none of the exceptions to public access under Rule 6 applied, but recognized Judge Kupersmith's earlier decision to deny the Media access to the tapes as the "functional equivalent of a temporary order to seal under Rule 7." As such, he postponed his decision on the Rule 6 grievance for five days "in order to give Judge Kupersmith an opportunity to issue a temporary order regarding sealing with notice of a hearing."

¶ 4. On February 1, 2008, Judge Kupersmith held a hearing on the temporary sealing of the requested tapes under Rule 7. In the order that followed, he noted that in the court's experience, "no criminal case has been reported as extensively or intensively as the present one," and consequently, he found "a substantial likelihood that empanelling a fair and impartial jury in Chittenden County [would] be very difficult and time-consuming, if possible at all." The court therefore decided that there was good cause to keep the audio and video records temporarily under seal, stating that they would "be made available no later than the conclusion of the trial." On the same day, Rooney filed a motion to change venue, arguing that pretrial publicity disparaged Rooney and that a change of venue was necessary to preserve his fair-trial rights.

¶ 5. On March 21, 2008, Judge Kupersmith issued an order granting Rooney's motion to suppress in part and denying it in part. Specifically, the court suppressed Rooney's "statements made to Detectives Twohig and Claremont on October 11, 2006, after 4 hours 20 minutes into the pre-polygraph interview." Later that month, on March 31, the court granted Rooney's motion to change venue, relocating the matter to Rutland District Court. At the same time, the court scheduled jury draw to begin on May 13, 2008.

¶ 6. Jury draw began in the aggravated murder trial on May 13, as scheduled. A

jury was empanelled, and the trial began the following day, on May 14. The court gave its final instructions to the jury on May 22, 2008, and the jury returned a guilty verdict.

¶ 7. On February 25, 2008, the Media appealed both Judge Crawford's January 28, 2008 order and Judge Kupersmith's February 1, 2008 order, arguing that: (1) under the First Amendment, common law, and Vermont's public-access rules, the Media has a presumptive right of access to the exhibits admitted in the suppression hearing, and (2) Rooney's Sixth Amendment fair-trial rights did not overcome that presumption. On April 28, 2008, the Media moved this Court for expedited review of its appeal. We granted the motion, and heard oral argument on May 15, 2008.

¶ 8. On the same day the jury returned its verdict in the Rooney case — after oral argument, but before we issued a decision on the appeal — Judge Kupersmith issued an entry order vacating his earlier decision denying the Media's request to copy audio and video exhibits. The State filed a motion to dismiss the appeal on May 29, arguing that the court's May 22 order rendered the appeal moot. The Media responded with an opposition memorandum, conceding that the matter was moot, but arguing that an exception to the mootness doctrine applies to the facts of this case.

¶ 9. We begin by considering our authority to render an opinion in the present case. The Vermont Constitution, like its federal counterpart, limits our authority to the determination of actual, live controversies. *Houston v. Town of Waitsfield*, 2007 VT 135, ¶ 5, 183 Vt. 543, 944 A.2d 260 (mem.). For this reason, a case generally becomes moot when there is no longer a live controversy, or the parties involved lack a "legally cognizable interest in the outcome of the case." *In re S.N.*, 2007 VT 47, ¶ 5, 181 Vt. 641, 928 A.2d 510 (mem.) (quotation omitted). Even if the case presented an actual controversy in the lower court, we may not consider the issues unless they remain live throughout the appellate process. *In re Moriarty*, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991). Thus, if a change in facts or circumstances nullifies our ability to grant effective relief, the case is moot.

¶ 10. Here, the controversy between the parties was predicated on the court's denial of the Media's request to copy audio and video tapes entered into evidence at the suppression hearing. The issue on appeal — the Media's right to access pretrial court records — remained "live" from the time of the denial until the end of trial on May 22, 2008 when the court vacated its ruling, allowing the Media full access to the requested records. Under the general rule, then, the case appears to be moot, leaving us without authority to render a decision in this appeal.

¶ 11. The Media, however, assert that we should nonetheless decide this appeal because it falls within the exception to the mootness doctrine for cases that are "capable of repetition yet evading review." This narrow exception applies only where: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *In re Vt. State Employees' Ass'n*, 2005 VT 135, ¶ 12, 179 Vt. 578, 893 A.2d 338 (mem.).

¶ 12. Under the circumstances of this case, we cannot say that the temporary sealing order was so short in duration as to evade appellate review. Judge Kupersmith's order temporarily sealing the requested exhibits was issued on February 1, 2008, and made clear that he would release the documents no sooner than jury draw but no later than the end of trial. The Media filed its notice of appeal on February 25. Not until April 28, more than two months after the appeal

was filed and less than three weeks before jury draw was scheduled to begin, however, did the Media file a motion to expedite the appeal. Had the Media acted more diligently in requesting expedited review, the challenged order could have, in all likelihood, been reviewed by this Court before Judge Kupersmith vacated the order. In considering the first prong of the exception, we focus on the order at issue in this case and determine "whether the elapsed time that gave rise to mootness" necessarily limited judicial review. *In re Kurtzman*, 194 F.3d 54, 59 (2d Cir. 1999) (per curiam). Because we find that the Media could have taken actions to expedite the appellate process, we conclude that the challenged action was not so short as to have "inevitably lapse[d] into mootness prior to review." *Id.*

¶ 13. Nor are the specific facts of this case likely to recur such that review of the issues here, despite the vacatur, is warranted. The Media cite two of our earlier public-access cases in support of its position that the temporary sealing order, despite its expiration, is likely to recur and should therefore be reviewed. In the first, *State v. Tallman*, the news media intervened in a criminal case to challenge district court orders sealing the affidavit of probable cause and excluding the public from parts of the suppression hearing. 148 Vt. 465, 537 A.2d 422 (1987). Before we issued a decision, the defendant in that case was acquitted, which technically mooted the intervenors' appeal. We decided the case on the merits nonetheless, finding that it fit the exception for cases that are capable of repetition yet evading review. *Id.* at 469, 537 A.2d at 424-25. Our analysis focused primarily on whether the public had a right of access to pretrial hearings and documents, a legal question that had not previously been answered in Vermont. While the Court agreed that the public has a qualified right of access to pretrial hearings and documents that can be overcome only by a defendant's Sixth

Amendment rights, it was decided by a four member Court, which split two-to-two on the proper standard by which to evaluate sealing and closure orders. See *id.* at 474, 537 A.2d at 427 (majority opinion); *id.* at 475-78, 537 A.2d at 428-30 (Allen, C.J., and Peck, J., concurring).

¶ 14. In *State v. Schaefer*, the second case cited by the Media, newspaper publishers again intervened in a criminal case to challenge district court orders sealing the affidavits of probable cause and partially closing a hearing on a motion to suppress. 157 Vt. 339, 599 A.2d 337 (1991). The court granted the defendant's motion to suppress, and the prosecutor dismissed the case prior to this Court's decision in the intervenors' appeal. Nevertheless, we relied on *Tallman*, and held that the case fit the exception to the mootness doctrine for issues capable of repetition yet evading review. *Id.* at 345, 599 A.2d at 341. We did so, however, only because the case raised "general questions about the proper standard to apply in balancing the right of access to criminal proceedings and documents against the Sixth Amendment right of a criminal defendant to a fair trial," given *Tallman's* split opinion. *Id.* More importantly, we recognized that as media-access cases "become more fact specific . . . the exact questions are less likely to recur in the future," and thus, such cases will be less likely to fit within the exception to the mootness doctrine. *Id.*

¶ 15. Contrary to the Media's assertion, *Tallman* and *Schaefer* militate against review of the present case. For an action to be capable of repetition under the exception to the mootness doctrine, there must be at least "a reasonable expectation that the same complaining party would be subjected to the same action again." *In re Vt. State Employees' Ass'n*, 2005 VT 135, ¶ 12. Legal controversies "sharply focused on a unique factual context," such as the one in question here, however, rarely meet this standard. *Spivey v. Barry*, 665 F.2d 1222, 1234 (D.C.

Cir. 1981). In essence, the Media's appeal presents the same legal questions as those addressed in both *Tallman* and *Schaefer* — whether the court properly balanced the Media's right to access pretrial materials against the defendant's Sixth Amendment right to a fair trial. The principal difference is in the specific facts of the case — e.g., the fact that the Media had access to the suppression hearing but was not permitted to copy the exhibits presented, the extensive news coverage of the murder, the overwhelmingly negative coverage of Rooney, and the geographic extent of the particular media sources' viewer/readership. Thus, the applicable legal standard has already been decided in previous cases, and our analysis, were we to reach the merits, would be wholly factual. Our decision on appeal would be "highly dependent upon a series of facts unlikely to be duplicated in the future," *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 424 (D.C. Cir. 2005), could not grant any relief to the Media, and would have no effect on the controversy over the Rooney exhibits that are now accessible to the Media. Nor would it affect future media-access controversies, as the facts to be balanced in subsequent cases would presumably be substantially different. See *Schaefer*, 157 Vt. at 345, 599 A.2d at 341 (as general media-access questions are answered, cases will become more fact specific and same questions will be less likely to recur). Consequently, we hold that the Media's appeal is moot and decline to consider this appeal on the merits.

*Dismissed.*