NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 53

No. 21-AP-220

In re Blue Cross and Blue Shield                              Supreme Court
2022 Individual & Small Group Market Rate Filing

                                                             On Appeal from
                                                             Green Mountain Care Board

                                                             April Term, 2022


Kevin Mullin, Chair

Bridget Asay and Michael Donofrio of Stris & Maher LLP, Montpelier, for Appellant.

Thomas J. Donovan, Jr., Attorney General, and Rachel E. Smith, Deputy Solicitor General,
  Montpelier, for Appellee Green Mountain Care Board.

Kaili Kuiper and Eric Schultheis, Vermont Legal Aid, Inc., Montpelier, for Appellee Office of
  the Health Care Advocate.


PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.    **CARROLL, J.**  Blue Cross Blue Shield of Vermont (Blue Cross) appeals from the Green Mountain Care Board's (GMCB) decision modifying its proposed health-insurance rates for 2022.  We affirm.

¶ 2.    In May 2021, Blue Cross filed its annual proposed rates for qualified health plans under the Affordable Care Act for individuals and small groups.  Following public comment, input from the Health Care Advocate, Blue Cross's actuary, the GMCB's independent actuary, and the Department of Financial Regulation (DFR), and a hearing, the GMCB issued a decision on August 5, 2021.  The GMCB approved Blue Cross's proposed rates with several exceptions, one of which is relevant here: its contribution to reserves (CTR).

¶ 3.     As the GMCB found and no party disputes: "[CTR] is an important source of funding policyholder reserves, or member reserves, which in turn are the funds that ensure that insurance companies remain solvent and can meet their obligations and pay member claims." "Risk Based Capital (RBC) is a method of measuring the minimum reserves appropriate to support overall business operations, an important element of solvency.  DFR has approved an RBC target for BCBSVT of 590% to 745%."  Blue Cross had sought a base CTR rate of 1.5%, but the GMCB ordered Blue Cross to lower it to 1.0%, thereby diminishing overall insurance rates by 0.5% and reducing health-insurance premiums.  The GMCB found that a 1.5% base CTR was "excessive" because Blue Cross was expected to be above its target RBC range by the end of 2021, "individuals and small businesses are still struggling financially after a year-long economic slowdown," and a 1.0% CTR would allow its "reserves to sit comfortably within the company's RBC target range."

¶ 4.     Blue Cross moved for reconsideration, arguing that the term "excessive" is strictly actuarial in nature, and that the GMCB misconstrued it by weighing non-actuarial evidence— testimony concerning affordability—as part of its examination of whether the proposed rate was excessive.  The GMCB denied the motion, and this appeal followed.

¶ 5.     On appeal, Blue Cross raises essentially the same issue.  Because none of the actuarial experts who testified concluded that Blue Cross's proposed CTR was excessive, Blue Cross argues, the GMCB could not properly conclude that it was.

¶ 6.     Blue Cross concedes that health-insurance rates for 2022 cannot now be changed, but it urges this Court to rule on the merits, arguing that this matter is not moot because the CTR rate for this year will disadvantage Blue Cross in future rate-review proceedings.  It also contends that even if the matter is technically moot, both recognized exceptions to mootness apply here: negative collateral consequences will stem from the GMCB's error, and this error is capable of repetition but evading review.

¶ 7.    "A case is moot if the reviewing court can no longer grant effective relief." In re Moriarty, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991) (quotation omitted). "An actual controversy must exist at all stages of the case, 'not merely at the time the plaintiff originally filed the complaint.' " Hunters, Anglers & Trappers Ass'n of Vt. v. Winooski Valley Park Dist., 2006 VT 82, ¶ 15, 181 Vt. 12, 913 A.2d 391 (quoting Doria v. Univ. of Vt., 156 Vt. 114, 117, 589 A.2d 317, 319 (1991)).

¶ 8.    Blue Cross contends that it will suffer certain financial injuries unless this Court reverses the GMCB and approves Blue Cross's proposed 2022 health-insurance rates. But the parties agree that this year's rates are now locked. See 45 C.F.R. § 156.210(a) (providing qualified health plan "issuer must set rates for an entire benefit year"); 33 V.S.A. § 1811(i) ("A registered carrier shall guarantee the rates on a health benefit plan for a minimum of 12 months."). Because we can grant no effective relief to Blue Cross, this controversy is moot. Accepting Blue Cross's argument that this matter is not moot because future, independent rate-review proceedings might result in financial injury is the kind of "hypothetical factual situation" we have explained the Vermont Constitution does not authorize us to review.[1] State v. Nash, 144 Vt. 427, 435, 479 A.2d 757, 761 (1984). Thus, to prevail Blue Cross must demonstrate that one of two exceptions to mootness applies.

¶ 9.    We have recognized the mootness exception for cases that are capable of repetition yet evading review. The exception applies when two conditions are met: (1) "the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration, and [(2)] there must be a reasonable expectation that the same complaining party will be subjected to the same action again." Price v. Town of Fairlee, 2011 VT 48, ¶ 24, 190 Vt. 66, 26 A.3d 26.

---

[1] This argument, while framed as justifying why this controversy is not moot, is more accurately an argument for why the controversy fits within an exception to mootness requiring continuing negative collateral consequences. In addition to explaining why this case is moot here, we address that exception below. See infra, ¶¶ 19-21.

¶ 10.    In considering the first prong, "we have examined whether, in the future, the complaining party 'would not be able to challenge [the action] effectively.' " In re Vt. Dep't of Pub. Serv. (Vermont Yankee), 2008 VT 89, ¶ 11, 184 Vt. 613, 959 A.2d 564 (mem.) (quoting Hunters, Anglers & Trappers Ass'n of Vt., 2006 VT 82, ¶ 16); see also Hamamoto v. Ige, 881 F.3d 719, 723 (9th Cir. 2018) (per curiam) ("The question . . . [is] whether the underlying action is almost certain to run its course before . . . the [court] can give the case full consideration." (quotation omitted)).  If a litigant "could have taken actions to expedite the appellate process" but did not, the matter does not fit within this exception.  State v. Rooney, 2008 VT 102, ¶ 12, 184 Vt. 620, 965 A.2d 481 (mem.); see Paige v. State, 2017 VT 54, ¶¶ 4 n.*, 9, 205 Vt. 287, 171 A.3d 1011 (explaining that appellant filed motions to extend time to file main brief and reply brief and waited until long after event mooting appeal before requesting oral argument from Supreme Court); Hamamoto, 881 F.3d at 723 (concluding capable-of-repetition-but-evading-review exception was not met in case where plaintiffs did "not demonstrate[] that expedited review would have been unavailable").

¶ 11.    Vermont Rule of Appellate Procedure 2 permits the Supreme Court to suspend any provision of the appellate rules to expedite its decision or for other good cause.  See Paige, 2017 VT 54, ¶ 25 (Robinson, J., concurring).  "The rule is intended to make clear the power of the Court . . . to alter the time schedule in cases of pressing concern to the public or the litigants . . . ." Reporter's Notes, V.R.A.P. 2.  The Court has expedited its review and decision-making when circumstances require it to.  See, e.g., Turner v. Shumlin, 2017 VT 2, 204 Vt. 78, 163 A.3d 1173 (per curiam) (opinion issued two weeks after appeal filed); In re Investigation Into Gen. Ord. 45 Notice Filed by Cent. Vt. Pub. Serv. Corp., 149 Vt. 285, 542 A.2d 288 (1988) (opinion addressing appellant's motion for expedited decision issued twenty days after appeal filed).[2]

---

[2]  The dissent suggests that In re Investigation is evidence that "highly technical" cases with "voluminous" records are not good candidates for expedited review.  Post, ¶ 5.  We do not pass judgment on whether the case before us presents highly technical questions or whether this

4

¶ 12. We have not established a firm period of time that is "too short" to allow judicial review, though our cases draw broad parameters. In State v. Rooney we held that less than four months was sufficient time to complete appellate review. 2008 VT 102, ¶ 12 (order sealing documents issued on February 1 and order vacated following conclusion of trial on May 22). In Vermont Yankee, we held that ten months was sufficient time to complete appellate review and thus declined to apply the exception. 2008 VT 89, ¶ 11. However, in Price, we applied this exception where the statutes at issue created a ninety-day window to review the challenged action at both the trial and appellate levels. 2011 VT 48, ¶¶ 24-25. We also applied the exception to a six-month window for judicial review at both trial and appellate levels. In re Durkee, 2017 VT 49, ¶¶ 10-13, 205 Vt. 11, 171 A.3d 33.

¶ 13. In Rooney, appellants filed an appeal from a temporary order sealing audio and visual records in a criminal case twenty-four days after the order issued. The order provided that the trial court would make the records available no later than the conclusion of the trial. Two months after filing the appeal, the appellants moved to expedite. The Court granted the motion and held oral argument on the matter approximately two weeks later. After oral argument but before the Court issued a decision, the trial court vacated its temporary sealing order, mooting the case. After post-argument briefing, the Court concluded that the matter did not fit within the

appellate record is voluminous. The underlying point is that Blue Cross did not give this Court the opportunity to decide whether it could have completed appellate review and, at least, issued a mandate by a date certain.

We came to the same conclusion in In re Investigation, noting that twenty days to decide the appeal left the litigants and the Court without the necessary preparation to decide the multiple issues raised. 149 Vt. at 288, 542 A.2d at 290. We attributed this lack of preparation to the appellant's approach to litigation, noting that the issues "could well have been presented long ago in an orderly fashion. They were not. The consequence of that fact must lie with those who failed to do so." Id. Blue Cross's approach to this appeal left the GMCB and this Court without even the opportunity to prepare for expedited review because it alone decided that "[t]he annual, cyclical nature of rate development and review does not leave enough time to fully litigate and review an appeal." Blue Cross must live with the consequences of waiting until the case became moot before presenting arguments that the case was either not moot or, in the alternative, that our two recognized exceptions to mootness applied. See infra, ¶ 14 (discussing appeal timeline).

capable-of-repetition-but-evading-review exception because if the appellants had "acted more diligently in requesting expedited review, the challenged order could have, in all likelihood, been reviewed" before the trial court vacated the order. Rooney, 2008 VT 102, ¶ 12. The appellants "could have taken actions to expedite the appellate process . . . [and] the challenged action was not so short as to have 'inevitably lapsed into mootness prior to review.' " Id. (brackets omitted) (quoting In re Kurtzman, 194 F.3d 54, 59 (2d Cir. 1999) (per curiam) (explaining that focus for reviewing court is whether elapsed time giving rise to mootness in case before it "would always limit judicial review of the question presented" (emphasis added) (quotation omitted)).

¶ 14.  This case is similar to Rooney. The GMCB issued its decision on August 5, 2021, exactly ninety days after Blue Cross filed its proposed rates. Blue Cross noticed the appeal on September 3, more than a week after the GMCB denied the request to reconsider its decision. Blue Cross filed its docketing statement on September 17 and filed a stipulated motion to extend the deadline to file its opening brief on October 5. Yet, it did not file a motion requesting the Court to expedite the matter pursuant to Rule 2. In short, Blue Cross never alerted the Court to the matter's expedient nature. Instead, if it had immediately appealed the GMCB's August 5 decision and requested an expedited timeline under Rule 2, the Court most likely would have had sufficient time to decide the appeal. See GMCB Rule 2.000, § 2.404 ("The decision of the [GMCB] shall constitute a final order, which may be appealed . . . ."), https://gmcboard.vermont.gov/sites/gmcb/files/files/resources/rules/13_12_12_Rule_2%20000_ Health_Insurance_Rate_Review.pdf [https://perma.cc/AQ6B-PDSH]; see also Paige, 2017 VT 54, ¶¶ 4 n.*, 9. We are cognizant that the Department of Vermont Health Access (DVHA) apparently required Blue Cross to provide its final approved rates eleven days after GMCB approval so that it could review and certify the health insurance plans, incorporate final plan information into brochures and comparison tools, and then update, populate, and test the online exchange system

in time for customers to browse plans by October 15.[3]  However, it is not clear from the record which of these events may constitute a firm deadline, if any, for completion of appellate review, nor even whether DVHA's timeline is a rule promulgated according to the requirements of the Vermont Administrative Procedure Act, 3 V.S.A. § 800, or some other administrative action.  Blue Cross fails to persuade us that this case evades review where it took no action to alert the Court to the matter's urgency nor demonstrated that it could not have taken such action otherwise.[4]  See Paige, 2017 VT 54, ¶ 26 (Robinson, J., concurring) ("That this case became moot before this Court could decide it was as much a function of appellant's approach to the litigation as the limitations of the judicial process.").

¶ 15.  Moreover, we assume that the Legislature has drafted the statute governing the filing and approval of policy forms and premiums thoughtfully.  See Soares v. Barnet Fire Dist. #2, 2022 VT 34, ¶ 18, __ Vt. __, __ A.3d __ (explaining presumption "that all language in a statute was drafted advisedly" (quotation omitted)).  The statute requires the GMCB to "approve, modify,

---

[3]  The DVHA's timeline for this year's rate review is substantially similar to last year's timeline.  See Vt. Health Connect, 2023 Qualified Health Plan and Qualified Dental Plan Certification Timeline (Nov. 16, 2021), https://dvha.vermont.gov/sites/dvha/files/documents/Budget_Legislative_Rules/2023%20QHP%20%26%20QDP%20Certification%20Timeline%20Final%20111621.pdf [https://perma.cc/UZ8G-TNVU].

[4]  The dissent suggests that the question of whether DVHA promulgated its timeline according to notice-and-comment procedures is less important than the federal administrative rules governing the timelines for plan recertification—rules which DVHA was obliged to follow.  Post, ¶ 31.  First, neither party briefed this issue on appeal, and therefore the issue is waived.  R. Brown & Sons, Inc. v. Int'l Harvester Corp., 142 Vt. 140, 142, 453 A.2d 83, 84 (1982) ("Issues not briefed on appeal are deemed waived.").  Second, even assuming the deadline the dissent comes up with from its own reading of the federal rules—October 18, 2021—is correct, which we have no reason to fault, it still does not explain why Blue Cross did nothing to expedite the appeal or why the ten weeks which elapsed between August 5 and October 18 was not long enough to complete appellate review.  Ultimately, as is evident from our case law, Blue Cross's approach to this litigation is the more important reason why this case evades review, not the various periods of time Blue Cross and the dissent tell us are too short to complete our review.  Appellate Rule 2 does not distinguish between cases with large or small records, nor between hard or easy cases.  The dissent's argument about the relative size of the record and other complexities of the matter before us is merely a post-hoc rationalization and implies a preference for some appeals over others as better candidates for expedited review.

or disapprove a rate request within [ninety] calendar days after receipt of an initial rate filing." 8 V.S.A. § 4062(a)(2)(A). Section 4062(g) also expressly provides for an "appeal [of] a decision of the [GMCB] approving, modifying, or disapproving the insurer's proposed rate to the Vermont Supreme Court." Blue Cross does not dispute that the GMCB complied with § 4062's timeline. If Blue Cross considers the timeline to be unfair or unjust, "the remedy is by a change of the law itself, to be effected by the [L]egislature." Donoghue v. Smith, 119 Vt. 259, 267, 126 A.2d 93, 98 (1956). Indeed, Blue Cross has successfully advocated for legislative change when it explained that it "strongly supported" the Legislature's unmerging of the individual and small-group markets in 2022. See 2021, No. 25 (Adj. Sess.), § 34. Consequently, it has failed to show that the rate-review process is "in its duration too short to be fully litigated prior to its cessation or expiration." Price, 2011 VT 48, ¶ 24.

¶ 16. However, even if this case did not evade review it is also not capable of repetition. To prevail on this prong, Blue Cross must "show that there is a reasonable expectation" that it "will be subjected to the same action again." Paige, 2017 VT 54, ¶ 13 (quotation omitted). This means that Blue Cross must demonstrate "that it is more than just 'theoretically possible' that the situation [it] currently objects to will repeat itself; rather, [Blue Cross] must show a 'demonstrated probability' that [it] will become embroiled again in the same situation." Id. (quoting In re Green Mountain Power Corp., 148 Vt. 333, 335, 532 A.2d 582, 584 (1987)).

¶ 17. Blue Cross concedes that "[b]etween the pandemic, pension losses, and legal and tax settlements, among other positive and negative factors, this has been a year like no other. These are extraordinary one-time situations and illustrate exactly why [Blue Cross] must maintain adequate reserves." An insurance-rate-review case the Maine Supreme Court decided in the wake of the 2008 financial crisis is analogous and instructive. Anthem Health Plans of Me., Inc. v. Superintendent of Ins., 2011 ME 48, 18 A.3d 824. In Anthem, the carrier proposed an increase in the 2009 individual health-insurance rates resulting in a 3% profit margin. Maine's superintendent

8

of insurance concluded that the margin was "excessive and discriminatory" and approved rate increases resulting in a 0% margin instead. Id. ¶ 2. During the appeal of the 2009 rates, the 2010 rates went into effect for which the superintendent of insurance had approved a 0.5% profit margin. Anthem argued that the controversy was not mooted by the 2010 rates going into effect because it had "challenged the 2010 rates on the same basis" as the 2009 rates. Id. ¶ 6. The supreme court disagreed and concluded that Anthem was seeking an advisory opinion "to provide guidance" to the superintendent of insurance in the future. Id. It reasoned that the case was not capable of repetition because 2009, according to the superintendent of insurance, had "presented a unique economic situation resulting in extreme financial hardship for subscribers." Id. ¶ 10 (quotation marks omitted).[5]

¶ 18.    Likewise, here, the GMCB explained that a 1.5% base CTR was "excessive" in part because "individuals and small businesses are still struggling financially after a year-long economic slowdown" due to the COVID-19 pandemic. In the wake of both the 2008 financial and housing crisis and the 2020 onset of the pandemic, Maine and Vermont took steps to protect rate payers from requested rate increases in light of extremely rare events. The circumstances surrounding the pandemic were, as Blue Cross concedes, "extraordinary," resulting in a "year like no other." Accordingly, Blue Cross simply cannot demonstrate that it is more than a "theoretical possibility" it "will become embroiled again in this same situation." Paige, 2017 VT 54, ¶ 13.

¶ 19.    We turn next to Blue Cross's argument that it will incur negative collateral consequences if we do not reach the merits. Blue Cross argues that a favorable advisory opinion from this Court would prevent potential future economic harm. We disagree.

---

[5] Notably, the following year, Anthem filed an "expedited appeal in hopes of avoiding the mootness inquiry that guided" the court's decision in the 2011 case. See Anthem Health Plans of Me., Inc. v. Superintendent of Ins., 2012 ME 21, ¶ 10, 40 A.3d 380. Though we recognize that the rate-review timeframes in the Maine cases are different than those involved here, the underlying point is the same—Blue Cross could have taken steps to request this Court to expedite the appeal.

¶ 20. We have recognized an exception to mootness where "the challenged action will continue to pose negative consequences for the appellant if it is not addressed." Hinkson v. Stevens, 2020 VT 69, ¶ 18, 213 Vt. 32, 239 A.3d 212 (quotation omitted); see also In re Collette, 2008 VT 136, ¶ 16, 185 Vt. 210, 969 A.2d 101 (explaining that negative-collateral-consequences exception is limited to situations when decision "is justified by a sufficient prospect that the decision will have an impact on the parties" (quotation omitted)). A "mere possibility" that a party will suffer negative collateral consequences without a favorable decision is insufficient. Collette, 2008 VT 136, ¶ 17. We have applied this exception to three kinds of cases: involuntary-hospitalization orders; post-conviction challenges; and stalking orders. See State v. J.S., 174 Vt. 619, 620, 817 A.2d 53, 55-56 (2002) (mem.) (involuntary hospitalization); In re Chandler, 2013 VT 10, ¶¶ 12-13, 193 Vt. 246, 67 A.3d 261 (post-conviction challenges); Hinkson, 2020 VT 69 (stalking orders). We have emphasized that these situations, even if moot, continue to affect the party, including consequences relating to potential stigma associated with the underlying order or conviction, reputational harms, and diminished opportunities to live a law-abiding life such as difficulties finding employment, housing, and education. See Hinkson, 2020 VT 69, ¶¶ 19-20.

¶ 21. Even if we were to extend this exception to situations beyond those involving stigma, reputational harms, and reduced life opportunities, we decline to do so where the party cannot demonstrate that it will suffer negative collateral consequences. Blue Cross's own representations express the opposite. For example, its chief actuary explained in an affidavit prepared in connection with the 2022 rate-review process, that "[p]rior rate calculations play no role in the current rate development. Each year's rate development is an independent process." Blue Cross argues on appeal that the "erroneously" low 2022 CTR will impact the "comparative baseline" for the 2023 CTR and cites a GMCB rule requiring applicants to bear the burden to justify a rate request. GMCB Rule 2.104(d). While it is true that Blue Cross bears the burden to justify future requests, the rules also provide the criteria by which the GMCB approves, modifies,

or disapproves a rate request. See id. 2.401; see also 8 V.S.A. § 4062(a)(2)(A), (B), (a)(3) (providing for same). The GMCB "shall" determine whether the rate, among other things, "protects insurer solvency and reserves." GMCB Rule 2.401(d). The "comparative baseline" Blue Cross refers to is in fact imposed by "federal rules and [Blue Cross's] own goal of transparency" so that it can report an average year-over-year increase, not that the GMCB is bound to determine 2023 rates based on 2022 rates. Whether the GMCB calls its yearly rate reviews "progress" or not in its annual reports is immaterial; such terminology is not expressed or implied in the applicable law governing the rate-review process. Blue Cross cites no provision requiring the GMCB to base its decision on previous rates, nor can we find any. We are unconvinced that reversing the GMCB's order and restoring the 2022 CTR to 1.5% or opining on the decision below will have any inexorable effect on future rate reviews.

¶ 22. The Court's role is not to divine when and where a decision would be beneficial. The Court's role is to resolve, absent extraordinary circumstances, live controversies before it. Because Blue Cross cannot demonstrate that this kind of case is capable of repetition yet evading review or subjects it to continuing negative collateral consequences, Blue Cross fails to meet the exceptional thresholds necessary for us to reach the merits in a moot case.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 23. **COHEN, J., dissenting.** I agree that this matter is technically moot because Blue Cross's 2022 rates can no longer be changed, but I disagree with the majority's conclusion that this case does not meet the mootness exception for matters capable of repetition but evading review. I think this exception applies and we should reach the merits, so I respectfully dissent.

11

¶ 24.     The majority correctly notes that the exception applies when two conditions are met: (1) "the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration, and [(2)] there must be a reasonable expectation that the same complaining party will be subjected to the same action again." Price v. Town of Fairlee, 2011 VT 48, ¶ 24, 190 Vt. 66, 26 A.3d 26.  Both of these elements are satisfied here.

¶ 25.     In examining the first prong, the majority suggests that Blue Cross should have foregone administrative reconsideration and taken other steps to expedite this appeal, and, if it had done so, the Court would have been able to decide the appeal before it became moot. Ante, ¶ 14. In my view, the majority sets an unrealistic expectation for litigants and the Court, and risks foreclosing any meaningful appellate review of GMCB decisions.

¶ 26.     The majority identifies several ways Blue Cross could have sped up appellate review.  They fault Blue Cross for seeking reconsideration of the GMCB's decision instead of filing an immediate appeal, not filing its appeal for more than a week after the GMCB denied reconsideration, stipulating to extend the time to file its brief, and not moving to expedite the appeal under V.R.A.P. 2. Ante, ¶ 14.  I do not think we should discourage litigants from seeking reconsideration by lower tribunals because that is a long-recognized method of conserving judicial and party resources by potentially obviating the need for an appeal.  The time for taking an appeal is tolled pending a timely motion for reconsideration, and for good reason.  Litigants should not be forced to choose between seeking reconsideration as allowed by rule and exercising their right to appellate review as provided by statute.

¶ 27.     The other steps noted by the majority would have reduced counsel's time to prepare briefs and present argument on a highly technical subject matter and voluminous record.  This would undermine our ability to conduct careful, thoughtful review and prepare a decision on an expedited timeline.  Our decision in In re Investigation into General Order 45 Notice Filed by Central Vermont Public Service Corp., 149 Vt. 285, 542 A.2d 288 (1988), exemplifies this point.

12

The majority cites this case as evidence of the Court's ability to act quickly when necessary because we resolved the appellant's motion for an expedited decision just twenty days after the appeal was filed, <u>ante</u>, ¶ 11, but we actually denied that motion because the issues were complex and novel—much like the question Blue Cross has presented here. <u>Id</u>. at 288, 542 A.2d at 290. In declining to expedite our determination of the merits, we explained:

> These issues are all of substance, and our determination with regard to them can be expected to have profound and lasting implications for the people of this state. A court which is final must be a court which is careful.
> . . . .
> The decisions of this Court represent the collegial opinion of all of the justices who join in the majority. Under the circumstances presented by [the appellant's] motion, it is simply not possible for all members of this Court to provide the thoughtful and scholarly input which these complex and important issues deserve.

<u>Id</u>. at 287, 542 A.2d at 289.

¶ 28. The fact that Blue Cross did not take steps to expedite its appeal should not be relevant to the evading-review element if expediting review would have been futile, either because expedited review was not appropriate under the circumstances or there would have been insufficient time for review even if the appeal were expedited as much as possible. The cases cited by the majority are consistent with this understanding. See <u>State v. Rooney</u>, 2008 VT 102, ¶ 12, 184 Vt. 620, 965 A.2d 481 (mem.) ("Had the Media acted more diligently in requesting expedited review, the challenged order could have, in all likelihood, been reviewed by this Court before [the trial court] vacated the order."); <u>Paige v. State</u>, 2017 VT 54, ¶ 26, 205 Vt. 287, 171 A.3d 1011 (Robinson, J., concurring) ("That this case became moot before this Court could decide it was as much a function of appellant's approach to the litigation as the limitations of the judicial process."). I question whether expedited procedures under V.R.A.P. 2 would have been feasible or appropriate for this appeal given the size of the record and complexity of the legal issues. More importantly, even if Blue Cross had taken every step identified by the majority, there still would not have been enough time to complete meaningful appellate review.

13

¶ 29. I acknowledge it is difficult to pinpoint the precise date when this case, or any GMCB annual rate appeal, would become moot. Indeed, the majority does not do so, but I think that identifying the window for appellate review is indispensable to our analysis under the evading-review prong. Assuming for the sake of argument that Blue Cross should have foregone reconsideration, the review period began on August 5, 2021, when the GMCB issued its initial decision. The majority and all parties seem to agree that rates locked by law no later than January 1, 2022, when coverage for the 2022 benefit year began. As a practical matter, however, that could not have been our deadline to decide the appeal. Under federal law, open enrollment must begin on November 1, 45 C.F.R. § 155.410(e)(4)(i), and the DVHA must complete its recertification process for existing plans offered year after year, like Blue Cross's standard plans, no later than two weeks prior to open enrollment, id. § 155.1075(b). Thus, the DVHA needed to finish the certification process by October 18. As the majority recognizes, the DVHA set a timeline, including intermediate deadlines, to ensure it could "review and certify the health insurance plans, incorporate final plan information into brochures and comparison tools, and then update, populate, and test the online exchange system in time for customers to browse plans by October 15."[6] Ante, ¶ 14. As part of that timeline, the DVHA required insurers to submit their final approved rates on August 16, eleven days after the GMCB issued its decision. The majority avoids addressing these deadlines, instead proclaiming that the record is unclear as to whether any of them constitutes a firm terminus for our review and questioning whether the DVHA's timeline has the force of law. Ante, ¶ 14. In doing so, the majority turns a blind eye to the practical implications of its decision.

¶ 30. Without ever specifying the window for Supreme Court review in this case, the majority relies heavily on State v. Rooney. 2008 VT 102. In Rooney we held that if the appellants had taken steps to expedite review, this Court likely would have been able to issue a decision

---

[6] It is not clear why the DVHA set October 15 as the date for customers to begin browsing plans, but it is close to the federal certification deadline, and presumably related.

14

before the controversy became moot, but the window for appeal in that case was from February 1 to May 22—nearly four months. Id. ¶¶ 10, 12. Here, the GMCB argues that October 15 was our effective deadline for appellate review, leaving just over two months to file, brief, and argue an appeal, and for us to issue a decision. In my view, this time period would set the bar for the evading-review prong far above our existing precedent, at an impossible height. But even October 15 would have been too late.

¶ 31. It is doubtful whether the DVHA can legally certify a plan after the federal deadline or offer a plan to Vermonters that is not certified, so any decision from this Court that delayed the DVHA's review beyond October 18 likely would have been too late to affect 2022 rates. See 45 C.F.R. § 155.1075(b) (mandating that state agency recertify existing plans two weeks before November 1 open enrollment); id. § 155.1000(b) (state agency "must offer only health plans which have in effect a certification issued"). And plan certification is not a mere formality. Under state and federal law, the DVHA has the duty to select plans to be offered on Vermont's health care exchange "in the best interests of individuals and qualified employers in this State." 33 V.S.A. § 1806(a); see also 45 C.F.R. §§ 155.1000, 155.1075. The DVHA cannot evaluate a plan until its applicable rate has been approved by the GMCB. Indeed, the Legislature has mandated that the DVHA consider "affordability" among other criteria in determining the best interests. 33 V.S.A. § 1806(a). The DVHA therefore would have needed to either delay its certification process until we issued a decision or, if it had issued a tentative certification determination pending appeal of the GMCB's decision in this Court, reconsider and finalize its certification in light of our opinion. Even after the DVHA completed its multifactored best-interests analysis, it still needed to incorporate the final plan information into brochures, comparison tools, and the online exchange platform, validate its data, and test the platform so that customers could review and select plans during open enrollment. The DVHA's timeline included a series of relatively short deadlines for completing all of these various tasks. Neither the majority nor any party suggests that this timeline

15

was unreasonable or that any of these tasks could have been skipped over. Regardless of whether the DVHA's timeline was promulgated as a rule, it reflected a combination of federally mandated deadlines and reasonable timeframes to complete functions that were necessary for Vermonters to be able to browse, compare, and select health-insurance plans. Considering what needed to be accomplished before mid-October, our practical window for appellate review was mere weeks or days.

¶ 32.    Insofar as the majority is suggesting that appeals from the GMCB could be briefed, argued, and decided in a couple of weeks or less, and that this timetable should be the new bar for satisfying the evading-review prong, I disagree. The majority cites only one case which we decided in such a short time, and that case involved a discrete constitutional question on direct petition to this Court with a short, stipulated set of facts. See Turner v. Shumlin, 2017 VT 2, 204 Vt. 78, 163 A.3d 1173 (per curiam). To the extent the majority suggests there was a longer period for appellate review here despite federal deadlines and the plethora of administrative tasks that the DVHA would have needed to complete after we issued our decision, I also disagree. This appeal became effectively moot on August 16—when the DVHA required insurers to provide their final rates—or very shortly thereafter. Because the timeline for health-insurance-rate regulation and administration remains essentially the same year to year, this case inherently evades review, and the first prong of the mootness exception is met. Cf. In re S.H., 141 Vt. 278, 281, 448 A.2d 148, 150 (1982) (concluding that evading-review prong not met because "nothing inherent" in challenged action "which would normally preclude review").

¶ 33.    There is also "a reasonable expectation that [Blue Cross] will be subjected to the same action again," and thus the second element of the mootness exception is met here. Price, 2011 VT 48, ¶ 24. Blue Cross is one of only two major health-insurance providers in Vermont, and it must submit its proposed rates to the GMCB every year for approval. The challenged action here is the GMCB's disapproval of the contribution to reserves (CTR), which is a core component

16

of a health-insurance rate. There is little doubt that Blue Cross will continue to offer health-insurance plans to Vermonters in future years, and that it will therefore seek the necessary approval for its rates from the GMCB on an annual basis.

¶ 34. The majority emphasizes the unique factual circumstances of the COVID-19 pandemic, and concludes that the capable-of-repetition prong is not met because the particular facts present in this case will not recur. Ante, ¶¶ 17-18. In my view, this analysis is too narrow. It is axiomatic that every case has unique facts. Were that our inquiry, this mootness exception would disappear completely. The standard is instead whether the appellant will be subjected to the same alleged legal wrong in the future. See Rooney, 2008 VT 102, ¶ 15 ("[T]here must be at least 'a reasonable expectation that the same complaining party would be subjected to the same action again.' " (emphasis added) (quoting In re Vt. State Emps.' Ass'n, 2005 VT 135, ¶ 12, 179 Vt. 578, 893 A.2d 338)); In re Durkee, 2017 VT 49, ¶ 14 ("Regardless of whether future cases have different fact patterns, there is a reasonable expectation that the legal issue would be the same."); Del Monte Fresh Produce Co. v. United States, 570 F.3d 316, 324 (D.C. Cir. 2009) (explaining that capable-of-repetition element turns not on "whether the precise historical facts that spawned the plaintiff's claims are likely to recur," but instead "whether the legal wrong complained of by the plaintiff is reasonably likely to recur").

¶ 35. To be sure, we do not typically accept moot appeals "highly dependent upon a series of facts unlikely to be duplicated in the future." Rooney, 2008 VT 102, ¶ 15 (quotation omitted). But despite the unique factual backdrop of 2021, Blue Cross's appeal does not depend on those facts. Blue Cross has presented a discrete legal question regarding a criterion that the GMCB is legally obligated to consider in every annual-rate review: whether the GMCB misinterpreted the term "excessive." See Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Serv., 462 U.S. 810, 820 n.14 (1983) (concluding that dispute was capable of repetition because "[t]he questions before the Court are certain to be central to future proceedings, and there is more than a reasonable

17

expectation that petitioners, who have taken part in most or all of the challenges to prior rate schedules, will be affected by those future proceedings" (quotation omitted)). The majority points out that the GMCB determined Blue Cross's proposed base CTR was "excessive" in part because of affordability concerns in the wake of the COVID-19 pandemic, ante, ¶ 18, but nowhere does the GMCB claim that its interpretation of the term "excessive" depended on the pandemic's extraordinary factual circumstances. In other words, the GMCB does not contend that the way it applied "excessive" was a one-time anomaly justified by the pandemic. Instead, the GMCB argues that because its governing rules and statutes require consideration of both affordability and excessiveness, it is appropriate to blend the analysis of those two terms and consider nonactuarial evidence in determining whether a proposed rate is excessive. This legal position would be relevant in any rate year.

¶ 36. Particularly given our lack of precedent regarding GMCB decisions, our case law strongly supports application of the mootness exception here. In Rooney, media organizations appealing the denial of access to criminal court records challenged whether the trial court had properly balanced the media's right to access pretrial materials against the defendant's right to a fair trial. We noted that these legal questions were the same as those previously addressed in State v. Tallman, 148 Vt. 465, 537 A.2d 422 (1987), and State v. Schaefer, 157 Vt. 339, 599 A.2d 337 (1991), and Rooney differed only in its facts. Even though the legal issues were likely to arise again, we declined to apply the mootness exception. We explained that

> the applicable legal standard has already been decided in previous cases, and our analysis, were we to reach the merits, would be wholly factual. Our decision on appeal would be highly dependent upon a series of facts unlikely to be duplicated in the future . . . . Nor would it affect future media-access controversies, as the facts to be balanced in subsequent cases would presumably be substantially different.

18

Rooney, 2008 VT 102, ¶ 15 (quotation omitted); see also Schaefer, 157 Vt. at 345, 599 A.2d at 341 (explaining that as general media-access questions are answered, cases will become more fact-specific and same questions will be less likely to recur).

¶ 37.    Our decision in In re P.S., 167 Vt. 63, 702 A.2d 98 (1997) is in accord.  There, a patient appealed the trial court's revocation of an order of nonhospitalization, challenging the sufficiency of the evidence and the legal standard the trial court had applied.  During the pendency of the appeal, the patient was released under a new order, and the controversy thus became moot.  In considering whether to apply the mootness exception for cases capable of repetition but evading review, we reached opposite conclusions as to the two arguments the patient had raised.  We held that "[w]hether the trial court's findings are supported by clear and convincing evidence does not" satisfy the exception "because the court's findings were specific to August 1995" and "any future revocations of P.S.'s order of nonhospitalization will be based on new fact patterns."  Id. at 68, 702 A.2d at 101.  We opined that "[t]he standard of dangerousness to be applied at revocation hearings does, however, fall within the exception for situations capable of repetition yet evading review.  Given P.S.'s past history, the general circumstances that gave rise to the revocation of P.S.'s nonhospitalization order are likely to occur again."  Id.

¶ 38.    If our task in this appeal were to apply an established rule of law to assess whether the GMCB's findings supported its conclusion regarding CTR, I may have agreed that the second prong was not met.  But that is not the situation.  Blue Cross has made clear that it is asking us to address a discrete legal issue concerning the GMCB's interpretation of the term "excessive," which is not defined by statute or regulation.  We have never addressed this issue; indeed, we have only ever decided one appeal from the GMCB, which dealt with a different question.  See In re MVP Health Ins. Co., 2016 VT 111, 203 Vt. 274, 155 A.3d 1207.  Because the GMCB applies the same statutory and regulatory standards to the specific facts of every annual qualified-health-plan-rate proposal, the same legal question is likely to recur.  Though the specific facts will change year to

year, I think our case law compels us to reach the merits of this appeal because Blue Cross has presented a novel legal issue that is nearly certain to affect future rate proceedings.

¶ 39.   I acknowledge that, as in Tallman, Schaefer, and Rooney, once we develop precedent regarding recurring legal issues in GMCB matters, it may be appropriate to decline to apply this mootness exception to reach the merits of future appeals that raise the same questions in different factual contexts.   Unfortunately, I think that the majority precludes us from ever developing such precedent.   Because in my view the majority opinion effectively forecloses appellate review for "[a]ny person aggrieved" by a GMCB health-insurance-rate decision, 18 V.S.A. § 9381(b), I respectfully dissent.

¶ 40.   I am authorized to state that Chief Justice Reiber joins this dissent.

_____
Associate Justice